*In re* ESTATE OF CHARLES J. PINCKARD, SR., Deceased.—(CHARLES J. PINCKARD, JR., Adm'r with Will Annexed of the Estate of Charles J. Pinckard, Sr., Plaintiff-Appellee, *v.* JEWEL S. LAFONTANT *et al.*, Respondents-Contemnors-Appellants.)

First District (4th Division)    Nos. 79-150, 79-151 cons.

Opinion filed September 30, 1980.—Modified on denial of rehearing April 2, 1981.

Julian B. Wilkins and William S. Clark, Jr., both of LaFontant, Wilkins & Butler, of Chicago, for appellants.

David Sugar, of Gottlieb & Schwartz, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:
Appellants, Jewel LaFontant, Herbert Fisher, and Earle Malkin, prosecuted two appeals, consolidated here, from two orders entered in the probate division of the circuit court of Cook County. One order found appellants in contempt of court and committed them to jail until they paid

over to the administrator of the estate of Charles Pinckard the sum of $20,400. The other order was entered at the conclusion of a citation proceeding brought pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1) and commanded the appellants to turn over to the administrator of the estate of Charles Pinckard money and assets in the sum of $20,400 belonging to the estate.

On appeal, we are asked to determine whether these orders were properly entered. We hold they were not and reverse and remand.

We will set out here separately the facts leading up to the two appeals before us. We note that many of the facts involving the two orders appealed from are interrelated and several of the hearings leading up to the appealed orders were held simultaneously. We also note that appellants brought two other appeals from related orders, which appeals were dismissed for want of prosecution. Where necessary, we will point out how the proceedings and orders from the dismissed appeals are related to the orders before us here.

### No. 79-151—Appeal from Contempt and Commitment

Prior to February 1972, the three appellants were members of a law firm named "Stradford, Lafontant, Fisher & Malkin." H. Ernest Lafontant, Jewel Lafontant's husband, was also a member of the firm. It is unclear whether the "Lafontant" named in the firm title was Ernest or Jewel, although both were named as attorneys of the firm on the firm's letterhead. The "Stradford" in the firm name referred to Jewel's father, who was deceased. The firm's name appeared on all correspondence of the firm, was located on the door of the firm's offices, and appeared in several legal publications including the Martindale-Hubbell Law Directory. The firm also had a bank account in the firm's name.

In February 1972, Jewel Lafontant left the law firm to become a delegate to the United Nations. It is apparent that she took certain steps to inform the necessary people, such as her clients, that she was no longer a member of the firm, although her name remained on the letterhead of the firm and remained listed in the Martindale-Hubbell Law Directory. Subsequent to February 1972, Jewel Lafontant had no further dealings with the law firm until mid-1976, after the major events concerning this case had taken place. She also received no money from the firm during the period of her absence.

After Jewel Lafontant's departure, the firm continued to do business in the firm name, with Ernest Lafontant and appellants Malkin and Fisher being active participants in the firm's business. In 1974, the firm became attorneys for the administrator of the estate of Charles Pinckard. This employment was acquired as a result of Ernest Lafontant's long-standing relationship with the family of Charles Pinckard. From 1974 until 1976,

the firm performed services for the estate through Ernest Lafontant and appellant Malkin. It is clear from the record that appellant Fisher had nothing to do with the estate.

During the two-year period, certain checks and stocks were turned over to Ernest Lafontant by the administrator of the estate as alleged payments for attorney's fees. Three checks totaling $18,500 and made out to "Stradford, Lafontant, Fisher & Malkin" were given to Ernest Lafontant and apparently were deposited in the firm's bank account. Also, Ernest Lafontant personally received 480 shares of stock valued at $14,400. No petition for attorney's fees was ever filed by Ernest Lafontant or the firm and no order of the court was ever entered in the estate proceedings allowing the payment of these fees. It is clear that Ernest Lafontant never told the administrator that such a petition and order may have been necessary.

In 1976, the administrator of the estate retained new counsel and the law firm was discharged. Shortly thereafter, the new counsel insisted that the firm file a petition for attorney's fees to justify the amounts paid out. (It appears that the court issued a formal order commanding the firm to file a petition for fees, but no such order is contained in the record.) Thereafter, Ernest Lafontant died, but a petition for attorney's fees was filed on behalf of Ernest Lafontant and the law firm of Stradford, Lafontant, Fisher and Malkin seeking fees of $30,500 for services rendered. This petition was filed and verified by appellant Malkin. The administrator of the estate filed an objection to the petition and also filed a motion for a turnover order requesting the court to order the law firm to turn over money and assets belonging to the estate which were allegedly in the possession of the law firm.

Extensive hearings were held at which the only member of the law firm present was Malkin. The hearings disclosed that the law firm was not entitled to the amount requested. The hearings also disclosed that Ernest Lafontant had in fact been the person who had received all of the checks and stocks paid out by the estate as alleged attorney's fees, and that Ernest Lafontant may have committed several legally improper acts during his handling of the estate.

On April 14, 1978, the court issued two orders. (Prior to this time, Jewel Lafontant returned to the law firm and its name was changed to "Lafontant, Wilkins & Fisher.") The first order of the trial court granted the petition for attorney's fees but only to the extent of $12,500. In this order, the trial court made several findings of fact, among which were the following:

> (1) That the petitioners, Ernest Lafontant and the law firm of Stradford, Lafontant, Fisher and Malkin, now the law firm of Lafontant, Wilkins and Fisher, had received, without approval of

the court, assets belonging to the estate having a total value of $32,900 ($18,500 in cash and stock valued at $14,400);

(2) That during the period of time that the law firm represented the estate the attorneys in the law firm included Jewel Lafontant, Herbert Fisher, Earle Malkin, and Ernest Lafontant;

(3) That the petitioners, including the above attorneys, had obtained and received assets of the estate equalling $20,400 to which they were not entitled and which had not been returned to the estate;

(4) That the petitioners, including the above attorneys, owe the estate $20,400.

This order was later amended in a manner not pertinent to this appeal.

The second order commanded, jointly and severally, the law firm of Lafontant, Wilkins and Fisher, and the individuals Jewel Lafontant, Herbert Fisher, and Earle Malkin, to turn over to the estate the sum of $20,400.

On May 24, 1978, appellants Lafontant, Malkin, and Fisher each filed a special appearance and moved to vacate the orders of April 14 as being entered against them, as individuals, without the court's having obtained personal jurisdiction over them. Appellants contended that they, as individuals, had never submitted their persons to the jurisdiction of the court by the filing of the petition for attorney's fees which had been filed on behalf of Ernest Lafontant and the law firm of Stradford, Lafontant, Fisher and Malkin. Appellants also contended that the firm of Stradford, Lafontant, Fisher and Malkin was not a partnership and was not a recognized legal entity for the purposes of jurisdiction. Appellants concluded that since there was no such legal entity as Stradford, Lafontant, Fisher and Malkin, and since they were not members of any recognized legal entity, no orders could have been directed against them as individuals without the court first having asserted, by service of process or otherwise, personal jurisdiction over them.

Subsequently, the trial court denied the appellants' motion to vacate. Shortly thereafter, the appellants filed a notice of appeal from the denial of this motion and from the April 14 orders. This appeal was dismissed for want of prosecution.

On August 4, 1978, the administrator filed a verified petition for attachment and a rule to show cause as to why appellants should be held in contempt for failure to comply with the April 14, 1978, turnover order. Hearings were held at which appellants renewed their attack on the April 14, 1978, orders as being entered without personal jurisdiction over them as individuals. On September 29, 1978, the court entered an order holding the appellants in contempt and gave them until October 20, 1978, to purge themselves of the contempt by paying to the administrator $20,400. Appellants were told that failure to purge would lead to their commitment for contempt.

On or about October 6, 1978, the appellants filed a notice of appeal from the order of September 29. This appeal was later dismissed by this court for want of prosecution, but before it was dismissed, the trial court held another hearing on October 2, 1978, because the appellants had failed to purge themselves of the previous contempt order. At this hearing, appellants again asserted that the orders of April 14 were entered without personal jurisdiction over them. On advice of counsel, appellants refused to state whether they would pay the administrator the $20,400 they had been ordered to pay. At the conclusion of the hearing, the trial court found them to be in continuous contempt of court and committed them to jail until they complied with the April 14 turnover order. Appellants took an appeal from this order, which appeal is before us now. In lieu of being committed, appellants were allowed to file individual bonds for $40,000 each.

### No. 79-150—Appeal from Citation Turnover Order

On April 26, 1978, 12 days after the April 14 orders were entered, the administrator began citation proceedings against the firm of Lafontant, Wilkins and Fisher, and Jewel Lafontant, Fisher and Malkin, as individuals, pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1). The citation requested the court to order the appellants to turn over to the administrator $20,400 in assets belonging to the estate. In support of the citation petition, the administrator cited the April 14, 1978, order which had found that the appellants had received and not returned those assets.

At a hearing held on May 24, 1978, the appellants filed a motion to dismiss the citation petition as being legally improper because it sought to recover assets of the estate which the appellants did not have and never did have in their possession. At this hearing and subsequent hearings, the following was brought out, much of which had been brought out at the previous hearing leading up to the orders of April 14.

Ernest Lafontant had personally received from the administrator the checks for $18,500 and the stock valued at $14,400. At the time of his death, the stock was, and still is, included as an asset in the estate of Ernest Lafontant. The checks made out to "Stadford, Lafontant, Fisher & Malkin" had been deposited in a bank account bearing that name, but none of the appellants had ever personally received any of the amounts represented by the checks, and it appears that Ernest Lafontant withdrew those funds for his own use.

Ernest Lafontant, when living, had control of the bank account and the records concerning that account, but by agreement of the parties, each member of the firm of Stradford, Lafontant, Fisher and Malkin could remove funds from the account but only in those amounts that they had put into the account as being payment for their respective services

rendered to their respective clients. Fisher and Jewel Lafontant had never received any money from the account for services they had rendered to the estate because they had rendered no services. Malkin testified, as he had in the proceedings leading up to the orders of April 14, that he had never received any money from the account for the services he rendered to the estate.

The appellants also attempted to show that the law firm of Stradford, Lafontant, Fisher and Malkin was not a partnership and that each member of the firm was a sole proprietor. Their principal support for this was that no agreement of partnership existed and that the money they received from the firm's account was based solely on the services they rendered to their individual clients, and thus they allegedly did not share in the profits of the firm. They also supported their contention by showing that the firm never filed an income tax return in the firm name, nor did the firm have an employer's tax account number.

The appellants attempted to conclude that since no partnership existed and since Ernest Lafontant had received all of the alleged assets of the estate, they could not be deemed to have had possession of those assets, nor could they be held liable for Ernest Lafontant's withholding of those assets.

The administrator rebutted all of these arguments by presenting evidence that showed the appellants had held themselves out as partners to the public and thus were just as liable as if they were partners. The evidence presented by the administrator included the following: (a) the firm's letterhead which showed the appellants to be members of the firm; (b) the acceptance of checks in the name of the firm; (c) oral representations made to the administrator that the law firm as named was acting as his attorneys; (d) prior oral references by Malkin to Ernest Lafontant's being a "partner" of the firm; (e) a journalist's article referring to Jewel Lafontant as a "senior partner" of the firm; and (f) the petition for attorney's fees that had been filed in the name of an entity known as Stradford, Lafontant, Fisher and Malkin. The administrator concluded that the appellants were at least partners by estoppel and thus were responsible for anything Ernest Lafontant had done.

The attorney for the appellants argued that even if there was a partnership by estoppel, the citation proceeding was still legally improper. He maintained that the citation proceeding was a special proceeding to recover assets of the estate. He argued that only Ernest Lafontant had ever posessed the alleged assets of the estate and not the appellants. Hence, even though the appellants may be liable for Ernest Lafontant's wrongful withholding of the alleged assets, this did not show that the appellants ever had possession or control of the estate assets, and thus a

citation proceeding was improper because, at best, the appellants were indebted to the estate, and proceedings other than citation proceedings had to be used to recover the claimed debt.

Following the hearings, the trial court issued a citation turnover order on October 23, 1978, commanding the appellants to turn over $20,400 belonging to the estate. In the order, the court found that the law firm of Stradford, Lafontant, Fisher and Malkin had held itself out to the public as being a partnership and the appellants had held themselves out as being partners in the firm. The court found that the law firm had received and converted assets of the estate and that the appellants, by holding themselves out as being members of this apparent partnership, were deemed to have converted the assets. The court then ordered the appellants to pay the $20,400 to the administrator. Appellants appealed this order, and that appeal is also before us now.

OPINION

I

We first consider the validity of the appellants' contention that the trial court lacked personal jurisdiction over the appellants to enter the findings and orders of April 14, 1978. It is conceded by the administrator that this issue can be raised here although an appeal was taken from the April 14 orders and subsequently dismissed. It is also conceded that without such jurisdiction the April 14 turnover order is void and the appellants could not be held in contempt for failure to comply with that order.

We hold the trial court had personal jurisdiction over appellant Malkin. We hold that the trial court did not have personal jurisdiction over appellants Fisher and Lafontant.

The April 14, 1978, orders culminated the proceedings that ostensibly began with the filing of a petition for attorney's fees. The petition was filed by Malkin on behalf of Ernest Lafontant and the law firm of Stradford, Lafontant, Fisher and Malkin. This petition initiated proceedings in the probate division of the circuit court. When a party initiates proceedings in a court he submits his person to the jurisdiction of that court. (*Roby v. South Park Commissioners* (1905), 215 Ill. 200, 74 N.E. 125.) The question here is who in fact submitted himself to the jurisdiction of the court by the filing of the petition for attorney's fees.

It appears to be the incredible assertion of the appellants that no one did. Though it is not alleged, at the time of the filing of the petition, Ernest Lafontant was dead and could hardly have submitted his living person to the jurisdiction of the court. It is claimed by appellants that there was no such legal entity as Stradford, Lafontant, Fisher and Malkin

and thus it could not submit to the jurisdiction of the court and those persons named in that nonentity did not submit to such jurisdiction individually.

■■ For us to hold that no one submitted to the jurisdiction of the court by the filing of the petition would be a mockery of the judicial process. Hence, even assuming that there was no such legal entity as Stradford, Lafontant, Fisher and Malkin, we nevertheless are compelled to conclude that appellant Malkin submitted his person to the jurisdiction of the court by the filing of the petition. Since Malkin filed and verified the petition and he admits he is the Malkin named in the firm name, he cannot now deny that he is a party named in the petition and he cannot now deny that he submitted his person to the jurisdiction of the court.

As to appellants Fisher and Lafontant, the case is different. It is clear from the record that neither of them had anything to do with the estate nor the filing of the petition for attorney's fees. It is also clear that they never took part in any of the proceedings leading up to the entry of the April 14, 1978, orders. Thus, while they may be the persons named in the petition, the question still remains whether Malkin had authority to file a petition on their behalf and thus the authority to submit their persons to the jurisdiction of the court.

It appears to this court that the situation here is similar to any action normally initiated in a court. Though a party is named as a complainant or a petitioner, it is usually his attorney that has performed the act of pleading on his behalf. If the attorney was authorized to act, the party can hardly deny that the attorney had the authority to submit his person to the jurisdiction of the court. However, where an attorney files a pleading on behalf of someone who has not retained him or authorized him to act, it cannot be said that such a party has submitted his person to the jurisdiction of the court.

Thus, assuming appellants Fisher and Lafontant are persons named in the petition for fees, we must determine whether Malkin had the authority to submit them to the jurisdiction of the court. Nothing in the record indicates that express authority was given. The question is whether such authority can be implied from the facts in this case.

As a result of hearings subsequent to the April 14, 1978, orders, the trial court found that though there may not have been an acutal partnership bearing the name of Stradford, Lafontant, Fisher and Malkin, the firm was held out to the public as being a partnership, and Jewel Lafontant, Fisher and Malkin were held out to the public as being partners in this firm. At oral argument, the administrator conceded that there may not have been an actual partnership but argued that appellants were apparent partners in an apparent partnership. Based on this, the administrator concluded that all of the orders were properly entered.

We are not concerned here with the issue of a partner's implied authority to submit a co-partner to the jurisdiction of a court concerning a partnership claim. The narrow issue is whether someone who appears to be a partner in an apparent partnership (Malkin) can be deemed to have the authority to submit his apparent partners (Jewel Lafontant and Fisher) to the jurisdiction of a court.

■■ There is confusion here between a legal doctrine used to create liability and the concept of personal jurisdiction to declare such liability or order individuals to do an act. The doctrine of apparent partnership, sometimes called partnership by estoppel, is a doctrine that creates liability, not jurisdiction. A person who allows himself to be held out as a partner with another may be liable for the acts committed by the other in the course of his apparent authority, even though there is no actual partnership. (See Ill. Rev. Stat. 1979, ch. 106½, par. 16.) However, we cannot find in this doctrine the apparent authority of one person to submit another to the jurisdiction of a court. Jurisdiction cannot be created by legal theories designed to serve purposes other than jurisdiction.

Consider for the moment the position of Jewel Lafontant. At best, though we need not so hold, she may be liable for the acts of Ernest Lafontant because she may have been held out to the public as being a partner with him. But it is obvious that she had no dealings with this apparent partnership during the time that the law firm represented the estate. It also appears that she had no knowledge of the proceedings leading up to the April 14 orders and did not receive notice of the orders until after they were entered. From this, it is impossible to hold that she had submitted her person to the jurisdiction of the court based on a theory that Malkin had some apparent authority to submit her to such jurisdiction. The concept of jurisdiction and the constitutional right to due process of law would require something more to be shown.

■■ Hence, we are compelled to hold that the trial court had no personal jurisdiction over Jewel Lafontant to enter the April 14, 1978, orders against her. We also hold likewise as to appellant Fisher, since we cannot base jurisdiction over him upon a theory of the mere apparent authority of Malkin to submit him to such jurisdiction. As a result, the contempt orders entered against Fisher and Lafontant are void since they were based on disobedience of an order which the trial court did not have jurisdiction to enter.

## II

We next consider whether Malkin could be held in contempt and committed to jail for failure to obey the April 14, 1978, order commanding him to pay the administrator $20,400. As we have already held, the trial court had personal jurisdiction over Malkin during the proceedings

leading up to the entry of the orders of April 14. We note that an appeal was taken from these orders and later dismissed. These orders, being final orders, cannot now be attacked as being improper or wrong in substance but can only be attacked on limited grounds such as the trial court's lack of jurisdiction to enter them. Nevertheless, we conclude that the holding of Malkin in contempt of the April 14, 1978, turnover order and committing him to jail for failure to obey that order was improper in this case.

■■ Though the findings and orders of April 14 are conclusive, this court may still examine the orders to determine what the trial court's actual findings were and what the trial court actually ordered. Also, if the language of the orders is broader than was justified by the nature of the case and the issues presented, we should construe that language to what the case required in light of the issues presented. See *People v. LaMothe* (1928), 331 Ill. 351, 163 N.E. 6.

■■ It is apparent that the only person who received any assets of the estate was Ernest Lafontant. Though the three checks for $18,500 were made out to "Stradford, Lafontant, Fisher & Malkin" and deposited in an account in that name, it is clear that if anyone received the proceeds from those checks it was Ernest Lafontant. Thus, Malkin never had actual possession of these funds, even during the time such funds were in the bank account. As has long been the law, the relationship between a bank and its depositor in a general account is one of debtor and creditor and the depositor does not have possession of the funds in the account. (See *Mid-City National Bank v. Mar Building Corp.* (1975), 34 Ill. App. 3d 1083, 339 N.E.2d 497; *Durkee v. Franklin Savings Association* (1974), 17 Ill. App. 3d 978, 309 N.E.2d 118.) Hence, Malkin never had possession of the $18,500 represented by the three checks. As to the $14,400 worth of stock, only Ernest Lafontant had actual possession of the stock and that stock is now included as an asset in his estate.

The trial court, in the first order of April 14, which granted the petition for attorney's fees to the extent of $12,500, in effect directed that Malkin, to the extent possible, see to the return to the Pinckard estate of the stock having a value of $14,400 and, inferentially, a return of cash of $6,000, thus making up the total amount of $20,400 due the said estate. It is clear that such a finding was based on a theory of liability of one apparent partner for the acts of another and included within its scope the conclusion reached by the trial court that $14,400 of the indebtedness or liability was related and restricted to the shares of stock that came into the possession of Ernest Lafontant. With the declaration of that restricted liability, we cannot disagree. Based on the record, the trial court had the jurisdiction to make findings as to Malkin, and such a restricted finding was a necessary incident to the controversy involving the petition for attorney's fees.

However, in the first order of April 14, the trial court also found that Malkin had obtained and received but had not returned assets belonging to the estate, including certain stock having a value of $14,400. The theory of Malkin's restricted liability arose because of the relationship between Malkin and Ernest Lafontant as apparent partners. Hence, what the trial court appears to have found was that Malkin through Ernest Lafontant had constructively obtained and received certain stock and cash but had not returned these assets of the estate because his apparent partner, Ernest Lafontant, had not done so. It is sufficient here to point out that there was no finding in the first order of April 14 that Malkin had *actually* obtained and received but not returned assets of the estate because such a finding would be inconsistent with all of the testimony in the record.

In the second order of April 14, the trial court commanded Malkin to turn over to the administrator $20,400. This order was obviously in response to the administrator's motion for a turnover order requesting the court to order the appellants to turn over money and assets belonging to the estate. In effect, the trial court ordered Malkin to turn over $20,400 in assets (which included stock valued at $14,400) belonging to the estate. Whether such an order was proper in substance in light of Malkin's never having possessed assets of the estate cannot be challenged at this time. However, it is clear that the trial court did not, at any time, order Malkin to pay the debt owed the estate in the amount of $20,400 (which included stock valued at $14,400) out of his own assets because such relief was never requested.

■■ Thus, we now come to the matter of the contempt orders. The first such order held the appellants in contempt and gave them 20 days to purge. An appeal was taken from this order and, not having been pursued, was later dismissed. The administrator argues that the appellants cannot now challenge the substance of the contempt orders because of the dismissal of this appeal since such a challenge is prevented by the doctrine of res judicata. However, this initial contempt order was not a final order, since no actual sanction was imposed. (*In re Estate of Kirk* (1971), 3 Ill. App. 3d 211, 278 N.E.2d 503; *Avis Plumbing & Heating Contractors Corp. v. McCormick Theological Seminary* (1971), 131 Ill. App. 2d 603, 268 N.E.2d 472.) Thus, the doctrine of res judicata, which applies only to final determinations, is inapplicable. See *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785.

The second contempt order held the appellants to be in continuous contempt for failure to obey the April 14 turnover order and committed them to jail. This order was appealed and the issues involving this contempt order are now before us.

The trial court held Malkin in contempt and committed him to jail for

failure to obey the order commanding him to turn over assets belonging to the estate. Though the April 14, 1978, order is conclusive and binding, we nevertheless believe that Malkin could not be held in contempt for failure to comply with that order. A person cannot be held in contempt for failure to comply with an order that is impossible for him to obey when such impossibility has occurred through no fault of his own. See *County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 319 N.E.2d 472; *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 364 N.E.2d 430.

■■ Malkin never had actual possession of any assets belonging to the estate. At the time of the contempt proceedings, Malkin could not obtain such possession. Though it appears that the trial court believed Ernest Lafontant may have converted assets of the estate to his own use, it does not necessarily follow that Malkin did so. Though Malkin could under some circumstances be liable for Ernest Lafontant's conversion of assets, he did not commit the possible conversion here involved. Hence, it was impossible for Malkin to obey the April 14, 1978, turnover order and such impossibility did not arise through the fault of Malkin. Accordingly, we must conclude that Malkin could not be held in contempt for failure to obey the turnover order.

### III

Finally, we consider the appeal brought from the citation turnover order entered on October 23, 1978. In that order, the court found that appellants had held themselves out to the public as being partners in an apparent partnership. The court also found that this apparent partnership had wrongfully received and converted assets of the estate in the amount of $20,400 (which included stock valued at $14,400) and that appellants were deemed to have received and converted those assets. As a result, the trial court ordered the appellants, jointly and severally, to pay the administrator $20,400, consisting in part of stock valued at $14,400.

It is clear that Ernest Lafontant was the only person who actually received and may have converted any assets belonging to the estate. It is also clear that the appellants were ordered to pay the $20,400 (consisting in part of stock valued at $14,400) because the trial court believed they were liable for the acts of Ernest Lafontant under a theory of apparent partnership. Because of this, we must hold that the citation turnover order was improper.

■■ ■ A citation proceeding brought pursuant to section 16—1 of the Probate Act (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1) is a special statutory proceeding that can be used for limited purposes. Though among those purposes is the recovery of assets belonging to the estate held by another or recovery of the proceeds of converted assets from the person who has

converted them (Ill. Rev. Stat. 1979, ch. 110½, par. 16—1(a,d)), we believe that such a proceeding was not intended to be used to declare the legal liability of a party who may be responsible for another's conversion of assets belonging to the estate.

A citation proceeding cannot be used to recover a debt. (*Johnson v. Nelson* (1930), 341 Ill. 119, 173 N.E. 77; *Lombardi v. Lepkowicz* (1975), 28 Ill. App. 3d 79, 328 N.E.2d 328.) A party who is legally responsible for the act of conversion of another may well have an action at law brought against him and eventually become a judgment debtor.

In the present case, the administrator brought a citation proceeding ostensibly to recover the assets including stock having a value of $14,400 belonging to the estate. However, the proceeding was actually being used to accomplish a different purpose. The administrator not only attempted to recover a debt from appellants as if they were judgment debtors but also attempted to use the proceeding to have them judicially declared debtors of the estate. If the proceeding could not be used to recover a debt, it could hardly be used to make the appellants judgment debtors.

Accordingly, we necessarily hold that the citation proceeding was improper in this case.

In summary, we point out the following: (1) there has been a judicial determination that appellant, Malkin, was directed to the extent by him possible, to return to the administrator of the Pinckard estate certain stock having been described as having a value of $14,400; and further and inferentially to turn over to the administrator $6,000; (2) in any future proceeding to recover this $6,000 debt owed, Malkin will be precluded to deny that he owes the money; (3) as to appellants Fisher and Lafontant, whether they are also jointly and severally liable for the amount can only be determined by an action brought against them, since the citation proceeding in which it was found that they were apparent partners in the firm of Stradford, Lafontant, Fisher and Malkin was itself an improper proceeding; and (4) also, there was no jurisdiction over them to make the findings and orders of April 14, 1978.

Consequently, for the reasons noted, we reverse the orders of the trial court which were appealed in case No. 79-150 and case No. 79-151 and remand for further proceedings consistent with the findings herein.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.