# Illinois Official Reports

## Appellate Court

---

### *Harris v. Vitale*, 2014 IL App (1st) 123514

---

| | |
|---|---|
| Appellate Court Caption | ROBERT F. HARRIS, Cook County Public Guardian, Plenary Guardian of the Estate and Person of Arlene Molloy, a Disabled Person, Petitioner-Appellant, v. MICHAEL J. VITALE, Respondent-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-12-3514 |
| Filed | March 18, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a transaction in which respondent attorney notarized his client's signature on a document the client used to obtain ownership of an annuity held by his incompetent mother, the trial court properly dismissed the citation to recover the assets at issue filed by the public guardian on behalf of the incompetent mother, notwithstanding the public guardian's contentions that the funds were converted by the son and paid to respondent attorney, who had a duty to the mother and was guilty of legal malpractice and official misconduct, since respondent stated that he did not notarize the mother's signature and the public guardian failed to present any evidence to counter the son's affidavit that he only asked to have his signature on the change-of-ownership document notarized by respondent attorney. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-P-902; the Hon. Jane L. Stuart, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Christopher Williams, of counsel), for appellant.

Hinshaw & Culbertson, LLP, of Chicago (Matthew R. Henderson, Nabil G. Foster, and Timothy G. Shelton, of counsel), for appellee.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Simon and Pierce concurred in the judgment and opinion.

## OPINION

¶ 1      Petitioner Robert F. Harris appeals the order of the circuit court granting respondent Michael J. Vitale's motion to dismiss petitioner's citation to recover assets against him pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2010)). On appeal, petitioner contends the court erred in granting the motion to dismiss because (1) Mr. Vitale committed legal malpractice and owed Arlene Molloy a duty of care; and (2) petitioner adequately pled a cause of action for official misconduct. Petitioner also contends that the trial court is authorized to award punitive damages against Mr. Vitale for official misconduct. For the following reasons, we affirm.

¶ 2                          JURISDICTION

¶ 3      The circuit court entered its order granting Mr. Vitale's motion to dismiss on October 31, 2012. The court also made a finding pursuant to Illinois Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) that "there is no just reason for delaying appeal." Petitioner filed a notice of appeal on November 30, 2012. Accordingly, this court has jurisdiction pursuant to Rule 304(a) governing appeals from judgments entered below as to fewer than all parties or claims.

¶ 4                          BACKGROUND

¶ 5      Arlene Molloy was born in September 1939, and suffers from dementia and chronic obstructive pulmonary disease. She has one son, Thomas, and they lived together in her home until 2009. In February 2009, Thomas left his mother alone at home and she became frightened and confused. Ms. Molloy called 911 and was admitted to MacNeal Hospital. This hospitalization was her twenty-sixth in the past year. While hospitalized, Ms. Molloy stated that she did not wish to live with her son. On February 9, 2009, petitioner filed a petition for appointment of a guardian of a disabled person, and a petition for temporary guardianship of Ms. Molloy. The court appointed petitioner temporary guardian of Ms. Molloy's estate and person on February 23, 2009.

¶ 6       On March 9, 2009, Thomas filed a cross-petition for appointment of a guardian of a disabled person. Mr. Vitale filed an appearance on Thomas's behalf. Ms. Molloy opposed the appointment of Thomas as guardian and indicated that she preferred the appointment of petitioner. While the petitions were pending, Thomas attempted to change ownership of Ms. Molloy's Symetra annuity policy to himself. As the citation to recover alleges, Symetra denied two previous attempts to change ownership of the annuity "because Arlene Molloy's signature on the form did not match the signature on file and the signature was not notarized."

¶ 7       In his deposition Thomas stated that he consulted with Mr. Vitale on June 13, 2009, for the purpose of notarizing the change-of-ownership document. He stated that he wanted Mr. Vitale to notarize only his signature. In his affidavit attached to his motion to dismiss, Mr. Vitale stated that Thomas asked him to notarize his signature on the Symetra form, and that he did not notarize Ms. Molloy's signature. Symetra eventually changed ownership to Thomas after Mr. Vitale notarized the form. This change allowed Thomas to withdraw more than $95,000 from the Symetra annuity.

¶ 8       Thomas subsequently changed ownership of Ms. Molloy's Protective annuity, worth approximately $240,000, and attempted to withdraw funds from the annuity. Petitioner filed a petition for preliminary injunction to freeze all of Thomas's accounts on February 11, 2010, and an emergency petition for temporary restraining order to freeze Thomas's accounts on March 2, 2010, which the court granted. Thomas did not access these funds due to the court's protective order. On March 11, 2010, Mr. Vitale withdrew his appearance as counsel for Thomas, citing his client's withholding of information regarding the funds at issue.

¶ 9       On September 16, 2011, petitioner filed his citation to recover assets against Symetra, Thomas and Mr. Vitale. The citation alleged legal malpractice and official misconduct claims against Mr. Vitale regarding his notarization of the Symetra change-of-ownership form. It alleged that Mr. Vitale owed Ms. Molloy a duty of care because Thomas hired him to file a cross-petition for guardianship of Ms. Molloy's estate. At the time he notarized the form, Mr. Vitale knew of Ms. Molloy's incapacity, and yet his notarization allowed Thomas to change ownership of the Symetra annuity from Ms. Molloy to himself. "[A]s a result of Michael Vitale's breach of duty to Arlene Molloy, Thomas Molloy unlawfully took Symetra funds." Petitioner requested that all of Ms. Molloy's assets so converted by Thomas "and paid to Michael J. Vitale" be immediately returned to Ms. Molloy's estate.

¶ 10       Regarding the official misconduct claim, petitioner alleged that Mr. Vitale "notarized Thomas Molloy and Arlene Molloy's signatures" on Symetra's change-of-ownership form although he did not actually witness Arlene Molloy's signature. Petitioner asked for compensatory and punitive damages deemed just by the court.

¶ 11       Mr. Vitale filed a motion to dismiss the citation against him on February 21, 2012. The court granted the motion on October 31, 2012, finding that the citation against Mr. Vitale was not "properly founded." On November 30, 2012, the court issued an order containing a Rule 304(a) finding, and petitioner filed this timely appeal that same day.

¶ 12                                     ANALYSIS

¶ 13       Pursuant to section 2-619.1 of the Code, Mr. Vitale filed a combined motion to dismiss involving both sections 2-615 and 2-619. A section 2-615 motion to dismiss challenges the sufficiency of the pleadings and the court determines whether the allegations of the

complaint, construed in the light most favorable to the nonmoving party and taking all well-pleaded facts as true, are sufficient to state a cause of action upon which relief may be granted. *Dratewska-Zator v. Rutherford*, 2013 IL App (1st) 122699, ¶ 14. A section 2-619 motion to dismiss, however, "admits the legal sufficiency of the complaint, but asserts affirmative matter outside the complaint that defeats the cause of action." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). The court construes the pleadings and any supporting documentary evidence in the light most favorable to the nonmoving party. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367-68 (2003). Under either section 2-615 or section 2-619, our review of a motion to dismiss is *de novo*. *Kean*, 235 Ill. 2d at 361.

¶ 14    Petitioner first contends that the trial court erred in dismissing the citation to recover assets because he pled sufficient facts to support a legal malpractice claim against Mr. Vitale. Mr. Vitale, however, argues that a citation to recover assets, brought pursuant to section 16-1 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/16-1 (West 2010)), is not the proper proceeding in which to make this claim. In his citation to recover assets, petitioner sought the recovery of Arlene Molloy's assets "converted by Thomas Molloy and paid to Michael J. Vitale." This court in *In re Estate of Pinckard*, 94 Ill. App. 3d 34, 46 (1980), held that citation proceedings under the Probate Act are "special statutory proceeding[s] that can be used for limited purposes." Although one purpose allowed is to recover wrongfully converted assets from the person who converted them, such proceedings are "not intended to be used to declare the legal liability of a party who may be responsible for another's conversion of assets belonging to the estate." *Id*. at 47. Petitioner alleges that Mr. Vitale wrongfully notarized Ms. Molloy's signature which allowed Thomas to change ownership of her Symetra annuity and withdraw more than $95,000 from the annuity. He alleges that Thomas converted Ms. Molloy's assets and that Mr. Vitale's actions allowed Thomas to convert those assets. *Pinckard* is on point and we are bound to follow that decision; a citation proceeding is not the proper proceeding in which to recover damages from Mr. Vitale. As this court stated in *Pinckard*, "[a] party who is legally responsible for the act of conversion of another may well have an action at law brought against him and eventually become a judgment debtor." *Id.* We make no determination here on the merits of a conversion claim petitioner may file in the future.

¶ 15    However, even on the merits petitioner has not shown that Mr. Vitale owed Ms. Molloy a duty of care. A cause of action for legal malpractice must allege facts establishing that (1) the attorney owed the plaintiff a duty of care arising from the attorney-client relationship; (2) the attorney breached that duty; (3) the plaintiff suffered actual damages; and (4) the attorney's breach of duty proximately caused the plaintiff's damages. *Fox v. Seiden*, 382 Ill. App. 3d 288, 294 (2008). Generally, an attorney owes a duty of care only to his client and not to third parties. *Pelham v. Griesheimer*, 92 Ill. 2d 13, 19 (1982). However, a nonclient third party can establish a duty owed by an attorney if he or she alleges and proves "that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the" attorney-client transaction. *Id.* at 21. "In cases of an adversarial nature, in order to create a duty on the part of the attorney to one other than a client, there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party." *Id*. at 23.

¶ 16    In the case at bar, Mr. Vitale was hired by Thomas to file a cross-petition for guardianship of Ms. Molloy. Petitioner contends that Mr. Vitale owed Ms. Molloy a duty of care because he was hired by Thomas to obtain guardianship of her in order to protect and

manage her estate. At the time he notarized the Symetra form, Mr. Vitale was aware that Ms. Molloy was incapable of managing her financial affairs, and in notarizing the form he breached his duty to Ms. Molloy. As a result, Thomas withdrew more than $95,000 from the annuity for his own personal gain. In his citation to recover assets, petitioner alleged that Mr. Vitale breached his duty of care to Ms. Molloy "as the primary or direct third party beneficiary to ensure that she receive the Symetra funds" and requested "that all assets of Arlene Molloy converted by Thomas Molloy and paid to Michael J. Vitale are returned immediately to the Estate of Arlene Molloy."

¶ 17 Since Mr. Vitale was hired by Thomas, he owed Ms. Molloy a duty of care only if she was the intended beneficiary of the attorney-client relationship. See *Pelham*, 92 Ill. 2d at 21. In *Pelham*, the children of divorced parents brought a complaint for legal malpractice against their mother's attorney seeking damages for the failure to name them as primary beneficiaries of their father's life insurance policies as provided in the divorce decree. *Id*. at 16-17. Our supreme court held that the children were not direct third-party beneficiaries of the attorney-client relationship because their mother hired her attorney "primarily for the purpose of obtaining a divorce, property settlement, and custody of the minor children" and not to represent her children's interests. *Id*. at 23. At best, the children were "only incidental beneficiaries in this situation." *Id*. Furthermore, the supreme court noted that dissolution proceedings "are, for the most part, adversarial in nature." *Id*. The court reasoned that a conflict of interest would exist if an attorney representing one of the spouses also owed a duty to their children. *Id*. For adversarial cases in particular, then, "there must be a clear indication that the representation by the attorney is intended to directly confer a benefit upon the third party." *Id*.

¶ 18 Here, petitioner filed a petition for guardianship of Ms. Molloy on February 9, 2009, and Thomas filed his cross-petition for guardianship one month later. Thomas hired Mr. Vitale to represent him on his cross-petition for guardianship. The primary purpose of the attorney-client relationship was not for the direct benefit of Ms. Molloy, but to obtain guardianship of Ms. Molloy for Thomas instead of petitioner. Also, in this instance the proceedings are for the most part adversarial in nature. In fact, Mr. Vitale contends that Ms. Molloy opposed the appointment of Thomas as guardian and indicated that she preferred the appointment of petitioner. A finding that an attorney representing one of the petitioners for guardianship of Ms. Molloy also owed a duty to Ms. Molloy clearly creates a conflict of interest situation. See *Pelham*, 92 Ill. 2d at 23. No facts are alleged that clearly indicate an intention by Thomas and Mr. Vitale to confer a direct benefit upon Ms. Molloy through their attorney-client relationship. Therefore, Mr. Vitale did not owe a duty to Ms. Molloy and dismissal of the citation on the legal malpractice count was proper.

¶ 19 Petitioner disagrees, arguing that Mr. Vitale owed Ms. Molloy a duty of care and citing as support *Schwartz v. Cortelloni*, 177 Ill. 2d 166 (1997), and *Estate of Powell v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854. However, these cases are factually distinguishable from the case at bar. In *Schwartz*, the party represented by the attorney was named guardian of the third-party nonclient and as guardian, she "was obligated to act for the primary benefit of her ward in managing her property interests." *Schwartz*, 177 Ill. 2d at 175. In the case before us, Thomas filed a cross-petition for guardianship but had not been named guardian of Ms. Molloy.

¶ 20 In *Powell*, the mother of a disabled adult hired the defendant attorneys to pursue a wrongful death action. *Powell*, 2013 IL App (1st) 121854, ¶ 20. The disabled adult was the

decedent's next of kin. The public guardian brought a legal malpractice suit on behalf of the disabled adult, alleging that the settlement amounts in the wrongful death action were not distributed as required by the Illinois Wrongful Death Act (Act) (740 ILCS 180/2.1 (West 2010)). *Powell*, 2013 IL App (1st) 121854, ¶ 1. The court noted that amounts recovered in an action brought under the Act are " 'for the exclusive benefit of the surviving spouse and next of kin of such deceased person.' " (Emphasis omitted.) *Id*. ¶ 18 (quoting 740 ILCS 180/2.1 (West 2010)). In other words, the surviving spouse and next of kin "are statutorily identified as the beneficiaries of such a cause of action." *Id.* ¶ 20. The court in *Powell* therefore held that an attorney hired to bring a wrongful death action under the Act owes a duty to those who are the decedent's next of kin, even if they did not directly hire the attorney. *Id*. ¶ 26. "Moreover, the beneficiaries in a wrongful death action should not be considered the same as individual beneficiaries of a decedent's estate, where a potential conflict of interest may arise between the estate's interest and the interest of each of the beneficiaries of the estate." *Id*. The case at issue here does not involve a wrongful death action brought under the Act in which the beneficiaries of the action are statutorily defined. *Schwartz* and *Powell* are inapposite.

¶ 21    Petitioner also argues that guardianship proceedings are not adversarial in nature, citing *In re Estate of Wellman*, 174 Ill. 2d 335 (1996). *Wellman* involved the restoration of a ward and the discharge of the public guardian as plenary guardian. The court noted long-established authority that in such a situation the public guardian lacks standing to appeal the restoration and discharge, and further reasoned that the restoration ruling is not an adverse ruling from which the public guardian may appeal. *Id*. at 347-48. In this context, the court stated that "guardianship proceedings are not, strictly speaking, adversarial." *Id*. Here, the guardianship issue is not merely the appointment of a guardian, but which guardian to appoint given the competing petitions filed by petitioner and Thomas. Unlike the situation in *Wellman*, the proceeding here is adversarial in nature.

¶ 22    Petitioner argues in the alternative that Mr. Vitale engaged in official misconduct under the Illinois Notary Public Act (5 ILCS 312/1-101 *et seq.* (West 2010)). Pursuant to the statute, the notary public "must satisfy himself of the truth of a signer's identity" and "a notary who does so in a negligent or reckless manner has committed 'official misconduct' and is liable for any damages so caused." *Vancura v. Katris*, 238 Ill. 2d 352, 388 (2010). Petitioner contends that Mr. Vitale acted unreasonably when he allegedly notarized Ms. Molloy's signature without personally witnessing her signature because she was not present when he notarized the Symetra form. However, under section 6-102(d)(3) of the Notary Public Act satisfactory evidence of a person's true signature can come from identification documents as well as personal knowledge. Assuming Mr. Vitale notarized Ms. Molloy's signature, which he denies, the pleadings are silent as to whether materials regarding Ms. Molloy's identification were available to Mr. Vitale.

¶ 23    Furthermore, the record shows that Mr. Vitale intended only to notarize Thomas's signature on the Symetra form. Petitioner, however, contends that a "major factual disagreement" on this issue exists and therefore dismissal is not proper. Mr. Vitale filed a combined section 2-619.1 motion to dismiss, which involves both section 2-615 and 2-619. Although under a motion to dismiss this court must take all well-pleaded facts in the citation to recover as true, under section 2-619 we may also consider affirmative matter outside of the pleadings that defeats the claim. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). Affirmative matter may be "something in the nature of a defense that completely negates the cause of

action or refutes crucial conclusions of law or conclusions of material fact contained in, or inferred from the complaint." *Golden v. Mullen*, 295 Ill. App. 3d 865, 869 (1997). If the affirmative matter is not clear on the face of the complaint, the movant must include an affidavit to support his motion. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). If the movant satisfies his initial burden of proof by providing an affidavit, the burden shifts to the nonmoving party. *Id.* The trial court properly grants a section 2-619 motion to dismiss if the nonmoving party fails to submit admissible evidence to refute the affidavit. *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1101-02 (2009).

¶ 24 Mr. Vitale, in his affidavit attached to his motion to dismiss, stated that Thomas asked him to notarize his signature on the Symetra form, and that he did not notarize Ms. Molloy's signature. In his deposition, Thomas corroborated Mr. Vitale's account stating that he consulted with Mr. Vitale for the purpose of notarizing the change-of-ownership document. Thomas stated that he wanted Mr. Vitale to notarize only his signature. Petitioner does not offer admissible evidence to counter the affidavit, but only argues that their statements are unreasonable. The trial court properly dismissed the official misconduct count against Mr. Vitale.

¶ 25 Due to our disposition of these issues, we need not address petitioner's claim on appeal that punitive damages are recoverable for a finding of official misconduct.

¶ 26 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 27 Affirmed.