THE VILLAGE OF ROSELLE, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

Second District   No. 2—06—0294

Opinion filed November 7, 2006.

James H. Knippen and Adam C. Kruse, both of Walsh, Knippen, Knight & Pollock, Chtrd., of Wheaton, for appellant.

Stephen C. Carlson, Dale E. Thomas, Brian A. McAleenan, and Charles K. Schafer, all of Sidley Austin, LLP, and Jessica M. Aspen, of Exelon Business Services Company, both of Chicago, for appellee.

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, the Village of Roselle (Village), filed a two-count complaint against defendant, Commonwealth Edison Company (ComEd), in the circuit court of Du Page County. Count I of the complaint sought an accounting related to an electric tax imposed by the Village. Count II of the complaint purported to state a cause of action for spoliation of evidence. The circuit court granted ComEd's motion to dismiss count I, finding that the Illinois Commerce Commission (ICC) had exclusive jurisdiction over the accounting claim. The circuit court also granted ComEd's motion to dismiss count II, finding that the issue would be more properly resolved by the ICC as a result of its jurisdiction over the underlying accounting claim and that, in any event, the Village failed to sufficiently plead a claim for spoliation

of evidence. The Village filed a timely appeal from the trial court order. For the reasons that follow, we reverse the trial court's dismissal of the Village's accounting claim. We affirm the trial court's dismissal of the Village's claim for spoliation of evidence, but we remand that count to allow the Village to replead.

## I. BACKGROUND

The Village and ComEd are parties to a franchise agreement, pursuant to which ComEd provides electrical utility service to the Village. See Roselle Ordinance No. 92—2222 (eff. July 29, 1992). Pursuant to section 8—11—2(3) of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/8—11—2(3) (West 1998)), the Village adopted an ordinance imposing a tax (electric tax) upon the use or consumption of electricity within its borders. Roselle Code of Ordinances §20—38 (eff. April 26, 1999). The tax constitutes a debt owed to the Village by ComEd. 65 ILCS 5/8—11—2(c) (West 1998); Roselle Code of Ordinances §20—42 (eff. April 26, 1999). However, section 9—221 of the Public Utilities Act (Act) (220 ILCS 5/9—221 (West 1998)) authorizes ComEd to levy upon its customers "an additional charge equal to the sum of (1) an amount equal to such municipal tax, or any part thereof (2) 3% of such tax, or any part thereof, as the case may be, to cover costs of accounting, and (3) an amount equal to the increase in taxes and other payments to governmental bodies resulting from the amount of such additional charge."

On September 22, 2005, the Village filed a two-count complaint against ComEd alleging that it was due unpaid electric tax from ComEd. As noted previously, count I purported to state a cause of action for an accounting, while count II purported to state a cause of action for spoliation of evidence. The following factual allegations are taken from the Village's complaint.

On or about February 11, 2005, the Village's finance director sent to ComEd a letter requesting "a listing of addresses from [ComEd] where ComEd is collecting electric utility tax on behalf of the Village." The Village followed up its initial correspondence with a pair of letters dated February 28, 2005. The first letter, signed by the Village administrator, informed ComEd that the Village had retained Azavar Technologies (the auditors) "to assist [the Village] in a full and comprehensive audit of each of [its] utility tax payers." The second letter, signed by the Village's director of finance, notified ComEd of the Village's "intent to perform an audit of the *franchise fees/utility tax* paid to the Village." (Emphasis in original.)

Thereafter, the auditors discussed with representatives from ComEd the terms of the audit. Among the conditions imposed by

ComEd was that the auditors could view data only while at ComEd's offices or facilities. ComEd also insisted that the auditors not copy in any manner or remove any data from ComEd's facilities. As a result of these conditions, ComEd provided the auditors with a ComEd-owned laptop computer, which the auditors were to use to review the electronically-stored data. Moreover, because the auditors were prohibited from copying any data in any manner, the auditors used the ComEd-provided computer to input work product relative to the audit. The Village requested data from 72 months, but ComEd provided partial data from only one of those months. This partial data consisted of three individual "snapshots," which represented the same fields of data culled at three different points in time and which yielded three distinct compilations of data that could be compared. Based on the partial data, the auditors "were able to draw certain conclusions regarding fluctuations in taxed accounts, which led the [auditors] to the conclusion that ComEd owed unpaid tax monies to the Village." The Village further claimed that it has "reason to believe that ComEd is not properly designating premises relating to changes in the corporate boundaries of the Village."

At the time the auditors made their conclusions, the audit had been conducted under the auspices of ComEd's customer marketing systems department. However, responsibility for audit supervision was subsequently shifted to ComEd's tax department. Sometime later, the auditors sought to review the data at the tax department, but were informed that the laptop they had been using had been lost. Although the laptop was located a few days later, two of the three "snapshots," as well as the auditors' work product, had been irretrievably erased at the request of a ComEd executive. On June 23, 2005, the auditors, acting as the Village's agent, sent to ComEd a letter demanding an accounting. ComEd responded via a letter dated July 13, 2005, refusing to allow the accounting requested by the Village.

With respect to count I, the Village prayed for an order compelling ComEd:

"(a) To account to the Village of Roselle for those dollar amounts billed and subsequent taxes-per-premise within the corporate boundaries of the Village of Roselle ***; to which city the tax is being remitted; how much tax has been remitted on a monthly basis; and when tax began being remitted. This data should be provided on a month-by-month basis per-premise, and include a notation for which accounts are listed as tax exempt and when any exemption began, for the seventy-two (72) months prior to February 11, 2005;

(b) To account to the Village of Roselle for such other or further or different data and information that becomes necessary for the

subsequent investigation or verification of those discrepancies discovered after an audit of the information provided in part (a); and

(c) To pay the Village of Roselle all sums found due to the accounting."

With respect to count II, the Village alleged that it was the duty of ComEd "to exercise ordinary care and caution to protect and preserve the integrity of the data, information, and work product that was used and created by the Auditors for purposes of the audit by the Village," especially since ComEd prohibited that the information be copied in any manner and required that the information be reviewed and stored at ComEd facilities. The Village further alleged that ComEd was responsible for one or more "careless, negligent, willful, or intentional acts and/or omissions" related to the loss of the data and that, as a direct and proximate result of ComEd's conduct, the Village "is unable to prove the underlying action for Accounting."

ComEd filed a motion to dismiss both counts. ComEd argued that the Village's accounting claim should be dismissed pursuant to section 2—619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(1) (West 2004)) because state law vests the ICC with exclusive jurisdiction to regulate a public utility's collection of a municipal utility tax, and the Village has not exhausted its administrative remedies. See 220 ILCS 5/9—252 (West 2004). ComEd further argued that the Village's spoliation-of-evidence count should be dismissed pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2004)) because the Village failed to establish the required elements for such a claim. The Village responded that the ICC's exclusive jurisdiction is limited to claims that a public utility is charging an excessive rate for its services, and this is not such a claim. The Village also insisted that it pled all elements necessary to state a claim for negligent spoliation of evidence.

The trial court granted ComEd's motion to dismiss both counts. The court found that the ICC had exclusive jurisdiction over the accounting claim. Having so decided, the court remarked that "it would seem *** that the issue of spoliation, if any there be, should also go to the ICC." The court later voiced its agreement with ComEd's contention that the spoliation count was factually insufficient, but reiterated that the spoliation claim was "an ancillary matter *** which should be first determined by the [ICC]." The Village appealed.

## II. ANALYSIS

■ Before addressing the merits of this appeal, we point out what we perceive as a gross violation of Supreme Court Rule 341 (210 Ill. 2d R. 341) by ComEd's counsel. Rule 341 provides that if the appellee

opts to include a statement of facts in its brief, the statement of facts shall contain "the facts necessary to an understanding of the case, stated accurately and fairly *without argument or comment*, and with appropriate reference to the pages of the record on appeal." (Emphasis added.) 210 Ill. 2d R. 341(e)(6). Upon review of ComEd's brief, we conclude that, in violation of Rule 341, its statement of facts contains argument. For example, counsel asserts that ComEd is required by law to protect confidential customer information. Counsel goes on to quote the statutes that purportedly support ComEd's position and to argue why the information requested by the Village would run afoul of these statutes. Counsel also vigorously argues in the statement of facts that the electric tax is not governed by the franchise agreement between ComEd and the Village. We disregard these and other portions of ComEd's statement of facts that violate Rule 341 (see *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1052-53 (2005)), and we admonish counsel for ComEd to comply with the supreme court rules in the future.

### 1. Accounting Count

On appeal, the Village acknowledges that, pursuant to section 9—252 of the Act (220 ILCS 5/9—252 (West 2004)), the ICC has exclusive jurisdiction over complaints concerning "rates" or "charges" that are "excessive" or "unjustly discriminatory." However, according to the Village, its accounting claim does not fall within this category. Rather, the Village insists, its complaint is one for civil damages and is cognizable in the circuit court pursuant to section 5—201 of the Act (220 ILCS 5/5—201 (West 2004)). ComEd responds that the trial court correctly determined that the ICC should resolve the issue raised in count I of the Village's complaint. According to ComEd, the electric tax imposed by the Village constitutes a "rate" or "charge," which is governed by ComEd's tariffs on file with the ICC. ComEd further asserts that count I of the Village's complaint constitutes a claim that the "charge" is "unjustly discriminatory." Thus, ComEd reasons, the ICC has exclusive jurisdiction over this matter, pursuant to section 9—252 of the Act, and the trial court correctly dismissed count I of the Village's complaint.

ComEd's motion to dismiss the Village's accounting claim was brought pursuant to section 2—619(a)(1) of the Code (735 ILCS 5/2—619(a)(1) (West 2004)). A section 2—619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other matters that act to defeat the claim. *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632 (2004). In particular, section 2—619(a)(1) of the Code provides for the involuntary dismissal of a cause of action, based

on the trial court's lack of subject matter jurisdiction. We review *de novo* a dismissal based on section 2—619(a)(1) of the Code. *In re Marriage of Diaz*, 363 Ill. App. 3d 1091, 1094 (2006).

■ We begin our analysis with the relevant provisions of the Act. According to ComEd, section 9—252 of the Act (220 ILCS 5/9—252 (West 2004)) vests the ICC with exclusive jurisdiction over the Village's accounting action. That provision provides in part:

"When complaint is made to the [ICC] concerning any rate or other charge of any public utility and the [ICC] finds, after a hearing, that the public utility has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the [ICC] may order that the public utility make due reparation to the complainant therefor, with interest at the legal rate from the date of payment of such excessive or unjustly discriminatory amount." 220 ILCS 5/9—252 (West 2004).

Under this provision, the ICC has exclusive jurisdiction over complaints that involve rates or other charges of any public utility, when such rates or charges are alleged to be excessive or unjustly discriminatory. *Village of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810, 813 (1998). It necessarily follows that a circuit court has jurisdiction only on administrative review of issues involving excessive or unjustly discriminatory rates or charges. *Russell v. Kinney Contractors, Inc.*, 342 Ill. App. 3d 666, 671 (2003); *Village of Evergreen Park*, 296 Ill. App. 3d at 813.

■ Section 9—252, however, does not foreclose the circuit court from hearing all claims involving a public utility or arising under the Act. In this regard, section 5—201 of the Act, entitled "Civil Damages," provides in part:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by way of punishment. *An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation.*" (Emphasis added.) 220 ILCS 5/5—201 (West 2004).

*Flournoy v. Ameritech*, 351 Ill. App. 3d 583 (2004), is the most recent case discussing the interplay between sections 5—201 and 9—252 of the Act. In *Flournoy*, the plaintiff was an inmate at a prison

at which Ameritech provided telephone service. The plaintiff often made collect calls from the prison but would later reimburse the recipient for the cost of those calls. The plaintiff filed in circuit court a complaint against Ameritech, alleging that Ameritech deliberately cut off his collect calls only minutes after they were accepted. According to the plaintiff, this forced him to make another collect call to the same person, thereby resulting in multiple charges. The trial court granted Ameritech's motion to dismiss the complaint. On appeal, the reviewing court rejected Ameritech's contention that the circuit court lacked jurisdiction to hear the complaint, stating:

"In determining whether an action falls within the exclusive jurisdiction of the [ICC], courts have consistently focused on the nature of the relief ***. [Citations.] If the plaintiff's action is for reparations, the [ICC] has exclusive jurisdiction. However, if the action is for civil damages, then the circuit court may hear the case. [Citations.]

A claim is for reparations when the essence of the claim is that a utility has charged too much for a service. [Citations.] In contrast, a claim is for ordinary civil damages when the essence of the claim is not that the utility has excessively charged, but rather that the utility has done something else to wrong the plaintiff. [Citations.]" *Flournoy*, 351 Ill. App. 3d at 585.

Applying these definitions, the court ultimately concluded that the plaintiff's claim was one for civil damages. In so holding, the court noted that the plaintiff did not contest the actual rates charged or claim that they were excessive. *Flournoy*, 351 Ill. App. 3d at 586. Rather, the court determined, the plaintiff's claim involved damages due to alleged fraud and negligence that resulted in multiple charges and fees. *Flournoy*, 351 Ill. App. 3d at 586.

■ In this case, the Village's accounting claim does not fall within the exclusive jurisdiction of the ICC, because it does not concern a "rate or other charge of a public utility" that is alleged to be "excessive" or "unjustly discriminatory." The Act defines the term "rate" as follows:

" 'Rate' includes every individual or joint rate, fare, toll, charge, rental or other compensation of any public utility or any two or more such individual or joint rates, fares, tolls, charges, rental or other compensation of any public utility or any schedule or tariff thereof, and any rule, regulation, charge, practice or contract relating thereto." 220 ILCS 5/3—116 (West 2004).

The Act does not define the term "other charge." Clearly, however, the electric tax in this case cannot be characterized as a "rate" or "other charge," as the tax is not imposed by ComEd, the public utility. Authorization for the electric tax is derived not from the Act, but from

section 8—11—2(3) of the Municipal Code (65 ILCS 5/8—11—2(3) (West 1998)). The Village enacted an ordinance imposing the electric tax in accordance with this provision. Roselle Code of Ordinances §20—38 *et seq.* (eff. April 26, 1999). The Act itself refers to a tax imposed pursuant to section 8—11—2 of the Municipal Code as "a tax on [a] public utility." 220 ILCS 5/9—221 (West 1998). Moreover, the incidence of the tax rests on the utility (*Commonwealth Edison Co. v. Community Unit School District No. 200*, 44 Ill. App. 3d 665, 670-71 (1976)) and the tax "constitute[s] a debt owed to the municipality by such person delivering electricity." 65 ILCS 5/8—11—2(c) (West 1998). These additional attributes lead us to conclude that the electric tax is not a "rate or other charge of a public utility."

ComEd points out that the Act allows it to seek from its customers reimbursement for the electric tax plus administrative expenses as "an additional charge equal to the sum of" the tax and related expenses. 220 ILCS 5/9—221 (West 1998). ComEd reasons that because the Act refers to a municipal utility tax as a "charge" in this context, the electric tax imposed by the Village in this case should also be classified as a charge. ComEd's position, however, confuses the relationship between a public utility and a municipality with that between a public utility and its customers. Section 9—221 governs the relationship between a public utility and its customers. A municipal utility tax may become a "charge" to a utility's customers *if* the utility opts to pass on the tax to the customers. In this case, in fact, ComEd represents that it opted to pass on the electric tax to its customers. Thus, we agree that had this complaint involved a *customer's* claim that ComEd was improperly charging it the electric tax, the ICC would be the proper forum in which to resolve the customer's claim because the dispute would then involve a "charge" of ComEd. See *Community Unit School District No. 200*, 44 Ill. App. 3d 665 (addressing whether a utility had wrongly assessed against a customer a municipal utility tax on utilities outside of the municipality's borders). However, this litigation does not involve the relationship between ComEd and its customers. It involves a wholly distinct relationship, that between the Village and ComEd. Thus, for the purposes of this litigation, we do not find relevant the fact that ComEd passes on the electric tax to its customers as a "charge," which is governed by tariffs on file with the ICC.

ComEd also disputes the notion that section 8—11—2(c) of the Municipal Code (65 ILCS 5/8—11—2(c) (West 1998)) imposes the incidence of the electric tax on ComEd itself. ComEd notes that several years after this court decided *Community Unit School District No. 200*, the legislature amended section 8—11—2 of the Municipal Code to add language providing that "[i]f the person delivering electricity

fails to collect the tax from the purchaser, then the purchaser shall be required to pay the tax directly to the municipality in the manner prescribed by the municipality." Pub. Act 90—561, eff. August 1, 1998 (amending 65 ILCS 5/8—11—2 (West 1998)). According to ComEd, this language shows that the legislature never intended the incidence of the tax to fall upon the public utility. However, we are more persuaded by the Village's response that this language does nothing to change the fact that the incidence of the tax falls on the public utility, as it necessarily presupposes that the utility has at least attempted to collect the tax from the customer and failed in its attempt to do so. Any other interpretation would render the rest of the statute meaningless. See *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 548 (2006) (noting that a statute should be construed so as to render no part of the statute meaningless or superfluous). Moreover, ComEd's stance is undercut by the facts that (1) the same amendment also added the language providing that an electric tax "constitute[s] a debt owed to the municipality" by the public utility (Pub. Act 90—561, eff. August 1, 1998 (amending 65 ILCS 5/8—11—2 (West 1998))) and (2) section 9—221 of the Act (220 ILCS 5/9—221 (West 1998)) expressly refers to the tax authorized by section 8—11—2 of the Municipal Code as a "tax on [a] public utility."

Even if the electric tax imposed by the Village could be categorized as a "rate or other charge of a public utility," we find that count I of the Village's claim is not premised on the notion that the charge is "excessive or unjustly discriminatory." The essence of the Village's claim is not that ComEd charged too much for a product, commodity, or service. Rather, underlying the Village's accounting claim is the idea that ComEd owes unpaid electric tax to the Village. In this regard, the Village's claim is that the electric tax is being underpaid to the Village. ComEd cites to no provision vesting in the ICC exclusive jurisdiction to consider a utility's underpayment of a rate or other charge.

ComEd's answer to the idea that the Village's complaint involves an underpayment of tax is twofold. Initially, ComEd argues that the Village's claim constitutes a complaint that the electric tax is "unjustly discriminatory." According to ComEd, the gist of the Village's complaint is that "ComEd has levied the electric tax on some Roselle residents, but not others." However, we find no such allegation in the Village's complaint. The Village's complaint alleges that it "has reason to believe that ComEd is not properly designating premises relating to changes in the corporate boundaries of the Village." The Village seeks "billing and correlated utility tax data from ComEd specifically to examine the apparent inconsistencies related to recording annexed

premises and verify that ComEd is properly taxing each and every premise within the Village." We do not interpret these allegations to be that ComEd is levying the electric tax on some residents and not others. Rather, we interpret the allegations to state that because ComEd is not accurately recording all properties annexed into the corporate boundaries of the Village, ComEd is underpaying the amount of electric tax due to the Village. Stated differently, the allegations are of poor record keeping, not of unjust discrimination.

ComEd also asserts that it is unnecessary to determine whether the "rate" or "other charge" at issue is "excessive or unjustly discriminatory." ComEd claims that the ICC has exclusive jurisdiction "over a dispute about whether a particular charge applies," even if it is not excessive or unjustly discriminatory. In support of this position, ComEd cites *Freiderich v. Illinois-American Water Co.*, 94 Ill. App. 3d 172 (1981). ComEd's reliance on *Freiderich* is unpersuasive. In *Freiderich*, the plaintiff brought suit against a water company, seeking an injunction to have the water company install, at its own expense, a service pipe to connect the plaintiff's property with a nearby water main. The trial court dismissed the plaintiff's action on the basis that the ICC had exclusive jurisdiction over the matter. The appellate court affirmed, finding that the dispute involved the interpretation and application of rules of the ICC "regarding the extension of water service." *Freiderich*, 94 Ill. App. 3d at 176. To the extent that language in the *Freiderich* decision could be interpreted as stating that a claim under section 9—252 of the Act (220 ILCS 5/9—252 (West 2004)) does not require that a rate or charge be excessive or unjustly discriminatory, such language is *dicta*. Moreover, that this case does not even involve a "rate or other charge of a public utility" provides an additional basis to distinguish *Freiderich*.

ComEd cites various cases in support of its position that the Village's complaint rests on allegations that ComEd has imposed a "charge" in an "unjustly discriminatory" manner. However, none of the cases ComEd cites involves a municipality seeking an accounting of data for the purpose of determining whether a public utility is accurately calculating the amount of a municipal utility tax owed to the municipality. For instance, one of the issues addressed in *Community Unit School District No. 200*, 44 Ill. App. 3d 665, was whether the ICC had exclusive jurisdiction over a dispute concerning whether a utility had wrongly assessed against a customer a municipal utility tax on utilities outside of the municipality's borders. The court answered the inquiry in the affirmative on the basis that the customer's complaint involved excessive rates charged by the public utility. *Community Unit School District No. 200*, 44 Ill. App. 3d at 672. This case does not

involve a customer's challenge to a charge passed on to it by a public utility. For similar reasons, we also find misplaced ComEd's reliance on *Adler v. Illinois Commerce Comm'n*, 52 Ill. App. 3d 167 (1977) (holding that ICC has exclusive jurisdiction over customers' complaints; complaints involved claim of excessive rates in that customers alleged that telephone company was levying municipal utility tax on collect and credit card calls not originating within city limits), and *Thrasher v. Commonwealth Edison Co.*, 159 Ill. App. 3d 1076 (1987) (involving claim that public utility improperly charged municipality for electricity to streetlights that were out of service).

Having determined that the Village's accounting claim does not concern a "rate or other charge of a public utility" that is alleged to be "excessive or unjustly discriminatory," we conclude that the ICC does not have exclusive jurisdiction under section 9—252 of the Act (220 ILCS 5/9—252 (West 2004)). Since the essence of the Village's claim is not that ComEd has overcharged, it necessarily involves allegations that ComEd "has done something else to wrong the plaintiff." *Flournoy*, 351 Ill. App. 3d at 585. Therefore, we conclude that the Village's claim was properly filed in the circuit court. 220 ILCS 5/5—201 (West 2004).

■ Before moving on to the spoliation-of-evidence claim, we address ComEd's alternate argument that even if the ICC did not have exclusive jurisdiction, it had primary jurisdiction over the accounting claim. Initially, the Village argues that ComEd waived consideration of this issue because it did not raise it before the trial court. As a general rule, arguments for dismissal that are not raised at the trial court level are waived and cannot be raised for the first time on appeal. *City of Rockford v. Suski*, 307 Ill. App. 3d 233, 243 (1999). However, our review of the record indicates that ComEd did raise this issue in its reply in further support of its motion to dismiss. Under our supreme court rules, arguments raised for the first time in a reply brief *on appeal* are waived. (Emphasis added.) 210 Ill. 2d R. 341(e)(7); *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 395 (2004). The Village does not cite a corollary to this rule, applicable to proceedings in the trial court on a motion to dismiss. In fact, our research suggests that it is not unusual for a trial court to address an argument raised for the first time in a reply to a motion to dismiss or for a reviewing court to address the merits of the same issue on appeal. See *Trogi v. Diabri & Vicari, P.C.*, 362 Ill. App. 3d 93 (2005) (involving applicability of a statute of repose raised for the first time by the defendant in the reply in support of its motion to dismiss). Therefore, we reject the Village's waiver argument.

The Village also claims that we cannot grant the relief that ComEd

requests. The Village notes that in cases where primary jurisdiction is found to exist, our supreme court has stated, the action should be stayed at the trial court level, not dismissed. See *People v. N.L. Industries*, 152 Ill. 2d 82, 96 (1992). Because the trial court dismissed the Village's accounting claim, it reasons that upholding the dismissal of its complaint under the doctrine of primary jurisdiction would be improper. As a reviewing court, however, we may uphold a trial court's dismissal on any basis found in the record regardless of the propriety of the trial court's reasoning. *People v. Cornelius*, 213 Ill. 2d 178, 191 (2004), quoting *Bell v. Louisville & Nashville R.R. Co.*, 106 Ill. 2d 135, 148 (1985); *Argonaut Insurance Co. v. Safway Steel Products, Inc.*, 355 Ill. App. 3d 1, 11 n.7 (2004). We also have the authority pursuant to our supreme court rules to "enter any judgment and make any order that ought to have been given or made, and make any further orders and grant any relief *** that the case may require." 155 Ill. 2d R. 366(a)(5). As a result, if we find ComEd's primary-jurisdiction argument well founded, we can order the trial court to reverse the dismissal and enter an order staying the Village's action, pending a decision by the ICC.

In support of its position that primary jurisdiction for this dispute rests with the ICC, ComEd argues that the Village's complaint requests relief that it is expressly prohibited from providing under section 16—122(c) of the Act (220 ILCS 5/16—122(c) (West 2004)) and section 2HH of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2HH (West 2004)). The provision of the Act that ComEd cites requires an electrical utility to "make available" to units of local government "information concerning the usage, load shape curves, and other characteristics of customers by customer classification and location within the boundaries of the unit of local government." 220 ILCS 5/16—122(c) (West 2004). However, the same statute prohibits the electrical utility from providing "customer specific billing, usage, or load shape data" without customer authorization. 220 ILCS 5/16—122(c) (West 2004). Section 2HH of the Consumer Fraud Act (815 ILCS 505/2HH (West 2004)) requires written customer authorization for the release of customer billing information. According to ComEd, because the Village seeks "dollar amounts billed and subsequent taxes per premise for each and every premise," it is "unquestionably" seeking "customer specific billing" data, which ComEd is precluded from disclosing absent customer consent. ComEd further asserts that, to the extent that the Village seeks information short of customer-specific billing, any such request requires interpretation of technical terms of art and a determination whether such information may be properly disclosed.

The doctrine of primary jurisdiction " 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' " *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 343 (2005) (Freeman, J., dissenting upon denial of rehearing, joined by Kilbride, J.), quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64, 1 L. Ed. 2d 126, 132, 77 S. Ct. 161, 165 (1956). The doctrine ensures uniformity in the determination of certain types of administrative questions and promotes resort to administrative agency experience and expertise where the court is presented with a question outside its conventional experience. *Price*, 219 Ill. 2d at 348 (Freeman, J., dissenting upon denial of rehearing, joined by Kilbride, J.). With respect to primary jurisdiction, this court recently stated:

> "No fixed formula exists for applying the doctrine of primary jurisdiction; rather, in every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. [Citation.] When an agency's technical expertise would help resolve the controversy, or when there is a need for uniform administrative standards, a matter should be referred to an administrative agency. [Citation.] Conversely, when an agency's technical expertise is not likely to be helpful, or there is no need for uniform administrative standards, courts should not relinquish their authority over a matter to an agency. [Citation.] Where the legal and factual issues involved are standard fare for judges, the issues must be deemed to be within the conventional competence of the courts, and referral to an administrative body is not required." *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 853-54 (2004).

Count I of the Village's complaint alleges a cause of action for an accounting related to ComEd's remittance of the electric tax. To that end, the Village seeks an order compelling ComEd:

> "To account to the Village of Roselle for those dollar amounts billed and subsequent taxes-per-premises within the corporate boundaries of the Village of Roselle ***; to which city the tax is being remitted; how much tax has been remitted on a monthly basis; and when tax began being remitted."

We do not agree that the determination of whether the information requested by the Village constitutes ''customer specific billing'' implicates specialized knowledge or terms of art requiring interpretation by the ICC. In its brief, ComEd represents that the data in ques-

tion is "unquestionably *** 'customer specific billing' data." The confidence with which ComEd makes this statement enforces the notion that this matter is within the conventional competence of the courts to decide. See *Village of Itasca*, 352 Ill. App. 3d at 854. Moreover, ComEd admits in its brief that the information that the Village seeks can easily be determined using data that ComEd is permitted by statute to provide. Thus, in deciding the Village's claim, reference to section 16—122(c) of the Act may not even be required. Accordingly, we conclude that the ICC's special competence is not needed.

## 2. Spoliation of Evidence

The Village argues that the trial court should not have dismissed count II of its complaint, because it properly pled a cause of action for negligent spoliation of evidence. The trial court offered two reasons for dismissing the spoliation-of-evidence claim. First, the trial court determined that its finding that the ICC had exclusive jurisdiction over the underlying accounting claim required the spoliation issue to also be decided by the ICC. Second, the trial court concluded that count II was deficient in that it failed to state sufficient facts to set forth a cause of action for spoliation of evidence.

ComEd's motion to dismiss the Village's spoliation claim was brought pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2004)). We review *de novo* a dismissal pursuant to section 2—615 of the Code. *Lombard Historical Comm'n v. Village of Lombard*, 366 Ill. App. 3d 715, 719 (2006). In addressing a section 2—615 motion to dismiss, the relevant inquiry is whether the plaintiff has alleged sufficient facts that, if proved, would entitle the plaintiff to relief. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 192-93 (1995). All well-pleaded facts in the plaintiff's complaint and all reasonable inferences capable of being drawn therefrom must be taken as true, and the allegations must be viewed in the light most favorable to the plaintiff. *Board of Education of Indian Prairie School District No. 204 v. Du Page County Election Comm'n*, 341 Ill. App. 3d 327, 330 (2003). In addressing the propriety of a trial court order granting a section 2—615 motion to dismiss, however, a reviewing court does not assess the merits of the case. *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 9 (1997).

The trial court decided that the Village's spoliation claim could not survive the dismissal of the Village's accounting claim, because the spoliation claim was "ancillary" to the accounting claim. Obviously, our conclusion that the Village's accounting claim was properly filed in the circuit court renders this basis for dismissal invalid. That leaves us to address whether the Village's spoliation claim states a

cause of action upon which relief may be granted. Although the trial court found that count II of the Village's complaint did not state a cause of action for spoliation, the court did not provide a rationale for its decision. The Village argues that it set forth the necessary elements for negligent spoliation of evidence. An action for negligent spoliation is stated under negligence law. *Boyd*, 166 Ill. 2d at 194. Accordingly, a plaintiff claiming negligent spoliation must plead the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages. *Boyd*, 166 Ill. 2d at 194-95. We address each of these elements in turn, beginning with whether ComEd had a duty to the Village to preserve the "snapshots"[1] and auditor work product at issue.

■ As a general rule, there is no duty to preserve evidence. *Boyd*, 166 Ill. 2d at 195. However, as the *Boyd* court found, the existence of two elements will create a duty. First, a duty to preserve evidence may arise through an agreement, a contract, a statute, or another special circumstance, or where a defendant voluntarily assumes a duty by affirmative conduct. *Boyd*, 166 Ill. 2d at 195. This element is commonly referred to as the "relationship prong." *Andersen v. Mack Trucks, Inc.*, 341 Ill. App. 3d 212, 215 (2003). Once a plaintiff proves the relationship prong, the plaintiff must establish the "foreseeability prong." *Andersen*, 341 Ill. App. 3d at 215. That is, the plaintiff must demonstrate that a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action, and the pleadings must allege facts describing such circumstances. *Boyd*, 166 Ill. 2d at 195. In the absence of either the relationship or the foreseeability prong, there is no duty to preserve evidence. *Andersen*, 341 Ill. App. 3d at 215.

With respect to the relationship prong, the Village argues that ComEd's duty to preserve the material, which it admittedly erased from the laptop computer, arose from various Village ordinances, state statutes, and state regulations. The Village also argues that by imposing the restrictive conditions on the auditors, ComEd assumed a duty to preserve the material.

■ Initially, we reject the Village's claim that any Village ordinance, state statute, or state regulation imposed a duty to preserve the information on the computer. In support of its claim, the Village cites to three distinct sections of the franchise agreement between it and ComEd. Sections 13.1 and 13.2 of the franchise agreement (Roselle

---

[1] As we discuss later in this opinion, the Village's description of what the "snapshots" represent leads us to believe that they are electronic copies of tax data existing in ComEd's business records.

Ordinance No. 92—2222, §§13.1, 13.2 (eff. July 29, 1992)) require ComEd to comply with all applicable ordinances, statues, and regulations. However, neither section expressly requires ComEd to retain electronic copies of its books and records or any work product of the auditors. Therefore, the Village's reliance on those sections is misplaced. The Village also cites section 7.3 of the franchise agreement (Roselle Ordinance No. 92—2222, §7.3 (eff. July 29, 1992)), which states that "from time-to-time," ComEd shall:

> "[F]urnish such additional information as the Village may reasonably deem to be necessary to enable it to determine whether the Licensee is complying or has complied with the provisions of this Ordinance, other than those matters subject to the exclusive jurisdiction of a Competent Authority other than the Village. The Licensee shall not be required to provide information as to which it has a legal privilege to refuse to provide."

While this provision imposes a duty upon ComEd to "furnish" certain information, it does not require ComEd to "preserve" anything.

The Village also cites to the Illinois statute relating to the municipal utility tax and the corresponding Village ordinance. The Village argues as follows. The Village, as a municipality, has been granted the authority by the legislature to impose a municipal utility tax. 65 ILCS 5/8—11—2(3) (West 1998); Roselle Code of Ordinances §20—38 *et seq.* (eff. April 26, 1999). Pursuant to this authority, ComEd, as the provider of electrical utility service to the Village, has the responsibility of remitting the tax to the Village and the authority to seek reimbursement for the tax from its customers. 65 ILCS 5/8—11—2(c) (West 1998); Roselle Code of Ordinances §20—42 (eff. April 26, 1999). The ordinance imposing the electric tax requires "[e]very tax collector, and every taxpayer required to pay the tax *** [to] keep accurate books and records of its business or activity, including contemporaneous books and records denoting the transactions that gave rise, or may have given rise, to any tax liability under this chapter." Roselle Code of Ordinances §20—45 (eff. April 26, 1999). Illinois law, in turn, grants the Village "all powers necessary to enforce the collection of any tax imposed and collected by such municipality." 65 ILCS 5/8—3—15 (West 1998). Again, the Village's reliance on these statutes and ordinances is misplaced because they contain no language imposing a duty upon ComEd to preserve electronic copies of its books and records or any work product of the auditors.

The Village also cites to section 35 of the Local Government Taxpayers' Bill of Rights Act (50 ILCS 45/35 (West 2004)) and two sections of the Illinois Administrative Code. The Village's reliance on these authorities is likewise misplaced. Section 35 of the Local Govern-

ment Taxpayers' Bill of Rights Act sets forth the procedures for an audit by a municipal taxing authority, including detailing the minimum documentation of books and records to be made available to the auditor. 50 ILCS 45/35 (West 2004). Section 420.30 of Title 83 of the Illinois Administrative Code (83 Ill. Adm. Code §420.30, eff. September 1, 1962) provides that a public utility shall reasonably safeguard records. Section 250.10 of Title 83 of the Illinois Administrative Code (83 Ill. Adm. Code §250.10, adopted December 12, 1935) requires public utilities to maintain an office in Illinois for keeping certain records. None of these provisions requires a public utility to preserve electronic copies of books and records or auditor work product.

In fact, the Village acknowledges that these laws and regulations imposed no duty upon ComEd to preserve the materials at issue here. The Village states, "[t]he above ordinances, statutes, and regulations all place on ComEd, in varying capacities, an obligation to keep information relative to its collection of municipal utility tax moneys on behalf of the Village. *** [T]he natural corollary *** is that, once ComEd provides data or information to the Village for the purpose of an audit relative to ComEd's municipal utility tax collection and remission responsibilities, it has a duty to refrain from erasing or destroying the data it has provided." (Emphasis added.) By the use of the phrase "natural corollary," the Village implicitly recognizes what it refuses to expressly acknowledge, i.e., the statutes, ordinances, and regulations upon which it relies do not impose upon a public utility any duty to preserve "snapshots" or auditor work product.

Alternatively, the Village argues that by imposing conditions for the auditors to access the information, ComEd "assumed unto itself" a duty to preserve the "snapshots" and auditor work product. These conditions included that the auditors review data only at ComEd's offices, that they not copy or remove data from ComEd's facilities, and that they use a ComEd-provided laptop computer (which had to be left at ComEd's offices) to examine data and create work product. ComEd responds that the Village cites no relevant authority for the proposition that by imposing the restrictions, ComEd assumed a duty to preserve the "snapshots" and auditor work product. ComEd does not otherwise argue that the conditions it imposed do not meet the relationship prong of the Boyd test. ComEd does argue, however, that the Village failed to adequately plead facts to support the foreseeability prong of the duty to preserve evidence. The Village counters that the purpose of the audit was to assess whether ComEd had properly remitted the electric tax. The Village reasons that because ComEd was fully aware of the purpose of the audit, it was reasonably foreseeable to ComEd that the Village would bring a civil action to

recover any unpaid taxes. We find that the Village's complaint fails to plead sufficient facts to support the notion that the "snapshots" and auditor work product were foreseeably material to a potential civil action. *Jackson*, 294 Ill. App. 3d 1, is instructive on this point.

*Jackson* concerned a spoliation claim involving the loss of X rays allegedly needed to prove a malpractice claim. Similar to the instant case, the spoliation claim in *Jackson* was dismissed for failure to state a claim upon which relief could be granted. Although the *Jackson* court found that the plaintiff failed to establish a duty to preserve evidence, it did note that there was evidence in the record suggesting that the defendant had notice of litigation. *Jackson*, 294 Ill. App. 3d at 11. Specifically, the *Jackson* defendant had placed the X rays in a segregated litigation file. *Jackson*, 294 Ill. App. 3d at 11. The Village does not allege any similar evidence in this case. For instance, the Village does not allege that when the auditors left ComEd's offices, leaving behind the "snapshots" and auditor work product, it suggested to ComEd that it had found any deficiencies in the electric tax remitted by ComEd.

The Village argues that the fact that it requested data to conduct an audit was itself sufficient to put ComEd on notice that if the result of the audit were adverse to ComEd, the Village could *potentially* bring a civil action to collect the unpaid taxes. However, as we note above, when the Village's auditors left ComEd's offices, they gave no indication that the result of the audit was adverse to ComEd. Moreover, case law suggests that more than a request for certain evidence is required to put a party on notice of a potential civil action. Notably, there must be an additional indication that the defendant knew or reasonably should have known of the potential for litigation.

For instance, in *Boyd*, the plaintiff was injured when a heater he brought to work exploded. The plaintiff sought workers' compensation benefits from his employer. Two days after the accident, the defendant took possession of the heater, telling the plaintiff's wife that it needed the heater to investigate the workers' compensation claim and that it would test the heater to determine the cause of the explosion. When the plaintiff requested the return of the heater, he was told that it had been lost. Based on these facts, the supreme court concluded that the duty to preserve had been established. *Boyd*, 166 Ill. 2d at 195. The supreme court's analysis in *Boyd* suggests that it was not solely the plaintiff's request for the heater that established the duty to preserve. Instead, the supreme court emphasized that the defendant was aware that the heater was potentially defective, that the plaintiff had been seriously injured by the heater, and that the cause of the explosion had not been determined. Compare *Dardeen v. Kuehling*, 213 Ill. 2d

329, 338 (2004) (pointing out that the plaintiff never contacted the defendant to ask it to preserve evidence), with *Stinnes Corp. v. Kerr-McGee Coal Corp.*, 309 Ill. App. 3d 707, 714-15 (1999) (noting that the plaintiff's complaint alleged that the defendant had a policy of preserving equipment involved in accidents), and *Jackson*, 294 Ill. App. 3d at 11-12 (remarking that in addition to the plaintiff's request for the X rays, there was evidence that the defendant had placed the X rays in a segregated litigation file). In this case, ComEd provided the auditors some of the data the Village requested. The auditors captured the data on a laptop computer provided by ComEd. According to the Village's complaint, the data examined allowed the auditors "to draw certain conclusions regarding fluctuations in taxed accounts, which led the [auditors] to the conclusion that ComEd owed unpaid monies to the Village." We reiterate, however, that the Village does not allege that when the auditors returned the computer to ComEd, they informed ComEd of their findings. Accordingly, we conclude that the Village has failed to show that ComEd had a duty to preserve the "snapshots" or the auditor work product.

Although we conclude that the Village's complaint did not adequately plead a duty to preserve evidence, we do note that, when viewed in a light most favorable to the Village, its allegation that ComEd failed to take reasonable and necessary precautions to ensure that the computer and data stored on it were protected and preserved was sufficient to establish the breach-of-duty element of a spoliation claim. See *Jackson*, 294 Ill. App. 3d at 13. Nevertheless, the Village's complaint is also deficient with respect to the issues of causation and damages.

With respect to causation, a plaintiff must allege that an injury proximately resulted from a breach of duty. *Boyd*, 166 Ill. 2d at 196. Applying this notion to a spoliation-of-evidence claim, a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence caused the plaintiff to be unable to prove an underlying lawsuit. *Boyd*, 166 Ill. 2d at 196. Stated differently, a plaintiff must demonstrate that but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying lawsuit. *Boyd*, 166 Ill. 2d at 196 n.2. The Village claims that, when viewed in a light most favorable to it, its allegations establish that ComEd's destruction of the "snapshots" and auditor work product proximately caused it injury. The Village relies on the conditions ComEd placed on the audit, the fact that ComEd erased the data on the computer it provided to the Village, that the "snapshots" and work product cannot accurately be recreated, and that before the data had been erased, the auditors were able to draw the conclusion

that ComEd owed unpaid electric tax. The Village further states that its complaint alleges that it was injured in that it was unable to conduct its audit of ComEd and enforce its legal rights against ComEd.

The problem we see with the Village's argument is the lack of adequate evidence that the lost audit data, in particular what the Village refers to as "snapshots," cannot be recreated. The Village describes a "snapshot" as "a still image of the dynamic, ever-changing field of data about ComEd's accounts, taken at one exact point in time," which yields a compilation of data that could be compared with other "snapshots." This description necessarily implies that the "snapshots" are electronic copies of specific tax data existing in ComEd's records. There is no allegation that the data underlying these "snapshots" no longer exists. Indeed, as the Village itself notes, ComEd has an independent duty under various statutes, ordinances, and regulations to maintain accurate books and records of its business activities, including taxes. There is no allegation that ComEd violated any of these statutes, ordinances, or regulations with respect to the maintenance of its business records. Moreover, the Village's description of the "snapshots" as "dynamic" and "ever-changing" and its accompanying claim that the "snapshots" cannot be recreated are conclusions that are not supported by specific factual allegations. While we must accept as true all well-pleaded facts in the Village's complaint in a light most favorable to it, we are not required to accept as true conclusions of law or fact contained in the complaint that are not supported by specific factual allegations. *Veazey v. LaSalle Telecommunications, Inc.*, 334 Ill. App. 3d 926, 929 (2002); *Universal Outdoor, Inc. v. Village of Elk Grove*, 194 Ill. App. 3d 303, 305 (1990). The Village does not allege that the data underlying the "snapshots" was lost. Moreover, the Village does not allege that it asked ComEd to recreate these "snapshots" or even asked whether the "snapshots" can be recreated. As a result the Village failed to adequately plead the element of causation.

Turning to the issue of damages, our supreme court has stated that actual damages must be alleged in an action for negligent spoliation of evidence. *Boyd*, 166 Ill. 2d at 197. To allege the element of damages, a plaintiff is required to allege that a defendant's loss or destruction of the evidence caused the plaintiff to be unable to prove an otherwise valid, underlying cause of action. *Boyd*, 166 Ill. 2d at 197. In other words, there must be a nexus between the defendant's loss or destruction of the evidence and the plaintiff's ability to prove his underlying suit. It is evident from our discussion of causation that no such relationship has been established in this case.

Finally, we agree with the Village that, on remand, it should be al-

lowed to replead its negligent-spoliation-of-evidence claim. As we stated in *Andersen*, "[a] complaint should be dismissed with prejudice under section 2—615 only if it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to recover." Based on the record before us, we cannot say that it is clearly apparent that *no* set of facts can be proven that will entitle the Village to recover.

## III. CONCLUSION

For the reasons stated above, we reverse the judgment of the circuit court of Du Page County dismissing count I of the Village's complaint, and we remand count I for further proceedings. We affirm the judgment of the circuit court dismissing count II of the complaint, but we remand that count with instructions to allow the Village to replead the negligent-spoliation-of-evidence claim.

Affirmed in part and reversed in part; cause remanded with directions.

BOWMAN and CALLUM, JJ., concur.