2018 IL App (3d) 150760

Opinion filed May 29, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| JOHN COLT LANDRETH, an Illinois, Citizen, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, LaSalle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| RAYMOND P. FABRICIUS, P.C., | ) ) | Appeal No. 3-15-0760 |
| Defendant-Appellant, | ) ) | Circuit Nos. 09-L-13, 09-L-27 |
| and | ) ) | |
| Keith R. Leigh, an Illinois citizen; Anita L. Kopko, an Illinois citizen; Pool, Leigh & Kopko, P.C., an Illinois professional corporation; Pool, Leigh & Fabricius, an Illinois professional corporation; City of Ottawa, an Illinois municipal corporation, | ) ) ) ) ) ) ) | Honorable |
| | ) ) | William S. McNeal, |
| Defendants. | ) | Judge Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Schmidt and Wright concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The plaintiff, John Colt Landreth (Landreth) sued the defendant, the law firm of Pool,

Leigh, and Fabricius (PLF), for professional negligence, fraud, and other claims arising out of

PLF's alleged legal representation of Landreth. Landreth later added a claim for derivative liability against Raymond P. Fabricius, P.C. (Fabricius) alleging that, as a former partner of PLF, Fabricius was jointly and severally liable for any judgment entered against PLF for professional negligence and negligent misrepresentation. Fabricius moved to dismiss certain counts of Landreth's second amended complaint as untimely under section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 2/619 (West 2012)). The trial court denied Fabricius's motion. Thereafter, the trial court granted Landreth's motion for a summary determination that Fabricius was jointly and severally liable for PLF's debts under 735 ILCS 5/2-1005(d) (West 2012) and, upon Landreth's motion, entered a default judgment against PLF. Landreth subsequently filed a motion for summary judgment as to Fabricius's liability to Landreth, which the trial court granted.

¶ 2    More than one year later, Fabricius moved for summary judgment as to liability, arguing that Landreth's claims against Fabricius were untimely under section 214.3 of the Code of Civil Procedure (Code) (735 ILCS 5/13-214.3(c) (West 2012) (which governs claims of attorney malpractice) or under the judicially-created "reasonable time" exception to section 215 of the Code (735 ILCS 5/13-205 (West 2012)). Landreth moved to strike Fabricius's motion on the ground that Fabricius had waived such affirmative defenses or, in the alternative, that these defenses belonged to PLF, and PLF had waived them. The trial court granted Landreth's motion to strike Fabricius's motion, holding that Fabricius's motion was untimely and that the arguments asserted in Fabricius's motion had been waived. The trial court subsequently entered a final judgment against Fabricius.

¶ 3    In this appeal, Fabricius argues that the trial court erred by: (1) denying Fabricius's motion to dismiss Landreth's claims against Fabricius on statute of limitations grounds; (2)

2

summarily determining that Fabricius is jointly and severally liable for the professional negligence and negligent misrepresentations of PLF; and (3) granting Landreth's motion for summary judgment against Fabricius as to liability. Fabricius also argues that the trial court abused its discretion by striking Fabricius's motion for summary judgment.

¶ 4                                                    FACTS

¶ 5        On August 5, 2003, Landreth and the City of Ottawa (the City) executed a consulting agreement wherein the City engaged Landreth to provide real estate consulting, marketing, and development services. The agreement was drafted by Keith Leigh (Leigh), an attorney who Landreth alleged was with PLF. The agreement stated that the parties had "jointly utilized the law firm of [PLF] with respect to this Agreement." The agreement provided that it was binding on both parties and that it did not violate any presently-existing provision of law. Both parties performed under the agreement for approximately two years. Thereafter, the City stopped paying Landreth commissions and refused to pay him certain development fees he had earned pursuant to the agreement.

¶ 6        In February 2007, Landreth sued the City for breaching the consulting agreement. On or about April 4, 2007, the City moved to dismiss Landreth's suit, arguing for the first time that the agreement was void *ab initio* because there was no prior appropriation for the agreement, as required by the Municipal Code. On February 28, 2008, a court order was entered dismissing Landreth's breach of contract claim on the ground that the agreement violated certain requirements of the Municipal Code and was therefore void *ab initio*.[1]

---

[1] Specifically, the court held that that there had been no prior appropriation for the agreement and that the agreement's obligations would extend past the term of the mayor in office at the time of the agreement's execution, in violation of the Municipal Code.

3

¶ 7    In January and February, 2009, Landreth filed two lawsuits in the circuit court of LaSalle County which gave rise to the instant appeal. On January 27, 2009, Landreth filed a tort lawsuit (Case No. 09-L-13) against various defendants, including the City, Leigh, and Pool, Leigh, & Kopko, P.C., which Landreth alleged was formerly known as "Pool & Leigh, P.C." The complaint asserted claims of fraud against all the defendants, negligence against the City, and negligent misrepresentation against Leigh and Pool & Leigh, P.C. In February 2009, Landreth filed a legal malpractice lawsuit (Case No. 09-L-27) against Leigh and Pool, Leigh, & Kopko, P.C., which Landreth alleged was formerly known as "Pool & Leigh, P.C." In that lawsuit, Landreth alleged "on information and belief" that, prior to February 1, 2006, Pool & Leigh, P.C. "was associated with Raymond P. Fabricius, P.C." and "did business under the name Pool, Leigh, and Fabricius." The complaint alleged fraud against all the defendants, negligence against the City,[2] and negligent misrepresentation against Leigh and Pool & Leigh, P.C. Fabricius was not named as a defendant in either the tort lawsuit or the legal malpractice lawsuit.

¶ 8    Upon Landreth's request, the trial court consolidated Landreth's tort and legal malpractice lawsuits on November 10, 2011. That same day, Landreth filed a second amended complaint which combined all of his prior claims. In the second amended complaint, Landreth named Fabricius as a defendant for the first time. He asserted claims for fraudulent misrepresentation and fraudulent concealment against the City and the attorney defendants. He further asserted claims for breach of fiduciary duty, professional negligence, negligent misrepresentation, and "owner and successor liability" against the attorney defendants. The second amended complaint did not allege that Fabricius ever personally represented Landreth. Nor did it allege any specific fraudulent or negligent statements, concealments, or

_____

[2] Landreth's claims against the City were later voluntarily dismissed and are not at issue in this appeal.

4

misrepresentations made by Fabricius, nor any specific acts of professional negligence committed by Fabricius. Landreth's claims against Fabricius were entirely derivative; *i.e.*, Landreth claimed that Fabricius was liable solely because of Fabricius's status as a member or partner of PLF, which, Landreth alleged, was either a partnership or an unincorporated association organized for pecuniary profit.

¶ 9        On March 23, 2012, Fabricius moved to dismiss several counts of Landreth's second amended complaint pursuant to section 2-619 of the Code (735 ILCS 2/619 (West 2012)) on the ground that the claims pled against Fabricius were barred by the applicable statute of limitations. Fabricius's motion did not identify any specific statute of limitations, and Fabricius did not file a memorandum of law in support of its motion or identify any legal authorities supporting the application of any particular statute of limitations. The trial court initially ruled that Landreth's claims against Fabricius were time-barred under the six-year statute of repose governing claims of attorney malpractice (735 ILCS 5/13-214.3(c) (West 2012)) and granted Fabricius's motion to dismiss with prejudice. However, after Landreth moved for reconsideration, the trial court reversed its prior ruling and held that Landreth's claims against Fabricius were timely because: (1) Fabricius's claims were governed either by the five-year limitations period prescribed by 735 ILCS 5/13-205 (West 2012) (the "catch-all" statute of limitations that applies to "all civil actions not otherwise provided for") or the five-year limitations period prescribed by 735 ILCS 5/13-215 (West 2012) (which applies where there has been fraudulent concealment of a cause of action by the defendant ); and (2) Landreth's claims against Fabricius accrued (and the limitations period began to run) fewer than five years before Landreth asserted them. Accordingly, the trial court denied Fabricius's motion to dismiss.

¶ 10        In August of 2012, Landreth sought and obtained leave to file a third amended complaint.[3] The third amended complaint repeated the allegations contained in the second amended complaint regarding Fabricius's derivative liability for PLF's debts. It did not change any claims from the second amended complaint other than Landreth's claims against the City.

¶ 11        On September 14, 2012, the trial court entered an order dismissing with prejudice Landreth's claims against defendants Anita L. Kopko and Pool, Leigh, & Kopko, P.C. and entering a consent judgment in favor of Landreth and against defendant Leigh.

¶ 12        On October 5, 2012, the defendant filed his Answer to Landreth's third amended complaint. Fabricius's Answer did not assert any affirmative defenses. However, during a status conference approximately 10 months after Fabricius filed his Answer, the trial court granted Fabricius leave to file an affirmative defense "to preserve for appeal" the issue of whether the limitations provisions prescribed by section 214.3 of the Code were applicable to Landreth's derivative liability claims against Fabricius. The court noted that it was allowing this only for purposes of appeal since it had already ruled on the issue of the applicable statute of limitations. Pursuant to the trial court's order, Fabricius subsequently filed an affirmative defense stating that: (1) section 214.3 provides that actions against an attorney arising out of an act or omission in the performance of professional services must be commenced within two years from the time the plaintiff knew or reasonably should have known of the injury for which damages are sought, and, in all events not more than six years after the date of which the act or omission occurred; and (2) because the acts or omissions on which Landreth's allegations against Fabricius are

---

[3] Landreth filed his motion for leave to file the third amended complaint on August 3, 2012. The proposed third amended complaint was attached as an exhibit to Landreth's motion. The trial court granted Landreth's motion on August 13, 2012, and ordered Fabricius to file a response to Landreth's third amended complaint by October 12, 2012, which Fabricus did. Accordingly, although Landreth did not formally file his third amended complaint until November 2, 2012, both the parties and the trial court acted as if that complaint had been filed on August 3, 2012.

premised occurred in 2003, some or all of Landreth's causes of action against Fabricius are "barred by the statute of limitations prescribed by 735 ILCS 5/13-214.3." Fabricius did not identify in its affirmative defense when Landreth "knew or reasonably should have known of the injury for which damages are sought." Nor did Fabricius argue that Landreth had such knowledge more than two year before he filed suit against Fabricius. Because Fabricius's affirmative defense focused only on when the defendants' allegedly negligent acts or omissions occurred (as opposed to when Landreth discovered his injury), Fabricius's affirmative defense appeared to be based entirely on section 214.3(c)'s six-year statute of repose (which Fabricius erroneously referred to as a "statute of limitations.") Moreover, Fabricius's affirmative defense did not assert that section 215 of the Code, which tolls statutes of limitation and repose in cases involving fraudulent concealment by the defendant, should not apply to Landreth's claims against Fabricius.

¶ 13    After the parties had conducted discovery for several months, Landreth moved for a summary determination that Fabricius was jointly and severally liable for PLF's debts, including the alleged professional negligence and negligent misrepresentations of PLF. Landreth argued that there was no genuine dispute of material fact that PLF was either an unincorporated association organized for pecuniary profit, of which Fabricius was a member, or a "partnership by estoppel" pursuant to section 308 of the Uniform Partnership Act (805 ILCS 206/308 (West 2012)), of which Fabricius was a purported partner. Attached to Landreth's motion for summary determination were the affidavits of Landreth and attorney Drew Peel. In Landreth's affidavit, Landreth attested to various documents and communications he received identifying PLF as a law firm, including the consulting agreement. Landreth swore that, from at least June 2003 through November 2011, he believed that "[PLF] was a law firm, that [PLF] was some sort of

7

law firm partnership, that Keith Leigh was a partner in the [PLF] law firm, and that an attorney with the last name of Fabricius also was a partner in the [PLF] law firm." Landreth also averred that, in entering into and performing the agreement, he reasonably relied to his detriment on the representation that PLF was a law firm jointly representing him and the City in connection with the preparation of the consulting agreement, which was represented and warranted to be valid and enforceable and not in violation of applicable law. Peel's affidavit identified several pleadings and other documents filed by PLF.

¶ 14    Landreth also submitted various documents in support of his motion, including: (1) reported decisions of the Illinois Appellate Court (Third District) from January 1998 through June 2008 identifying Fabricius as an attorney with the law firm of PLF; (2) written appearances and other documents filed with state and federal courts identifying Fabricius as an attorney and/or partner with the law firm of PLF; (3) draft easements and draft property agreements provided to Landreth in connection with his work for the City identifying PLF as the preparer of the easements and the law firm to which notices of the property agreements should be sent; (4) admissions by Fabricius that he shared office space, a copy machine, a fax machine, a telephone system and utilities, and other unspecified expenses with P & L from July 1995 until February 2006.

¶ 15    Landreth also moved for a default judgment against PLF as to Landreth's professional negligence and negligent misrepresentation claims. Landreth provided notice and copies of this motion to attorneys for defendants Leigh, Anita Kopko, and Fabricius. The trial court invited Fabricius to file a written opposition to Landreth's motion for default judgment. Fabricius did not file a response or a written objection to Landreth's motion. Nor did Fabricius arrange for counsel to appear on behalf of PLF to oppose the motion.

¶ 16     On October 4, 2013, Fabricius filed its response to Landreth's motion for summary determination.  Attached to the response was the affidavit of Raymond Fabricius attesting that: (1) he is the president and sole shareholder of Fabricius; (2) from July 1995 to February 6, 2006, Fabricius and Pool & Leigh, P.C. shared office space and some expenses, but did not share profits, income, or clients, including the City; (3) Fabricius never met with Landreth or the City concerning the matters raised in Landreth's lawsuit, nor did he participate in performing or consulting as to the legal services purportedly provided by Leigh relative to the matter complained of in Landreth's lawsuit.  Fabricius's written response to Landreth's motion for summary determination made no mention of Landreth's motion for default judgment against PLF.

¶ 17     On November 22, 2013, the trial court conducted a hearing on Landreth's motions. During the hearing, the trial court again invited Fabricius to be heard on Landreth's default judgment motion against PLF.  Counsel for Landreth responded that he "did not think [he had] a legal basis to object to the actual entry of default."  However, "given the potential legal ramifications" to Fabricius, counsel asked that the court require proof of the allegations against PLF as well as proof of the allegations against Fabricius.

¶ 18     The trial court granted Landreth's motion for summary determination and ruled that Fabricius was jointly and severally liable for PLF's debts. In so ruling, the trial court found that there was no genuine dispute of material fact that PLF was either an unincorporated association organized for pecuniary profit, of which Fabricius was a member, or a "partnership by estoppel" under section 308 of the Uniform Partnership Act, of which Fabricius was a purported partner.

¶ 19     The trial court also granted Landreth's motion for default judgment against PLF.  Based on the record evidence, including a consent judgment previously entered pursuant to a settlement

9

wherein defendant Leigh admitted his personal liability for professional negligence and negligent misrepresentation, the trial court exercised its discretion to grant the default judgment without requiring a prove-up of Landreth's negligence allegations against PLF. On December 23, 2013, the trial court entered a default judgment of liability in favor of Landreth and against PLF. Fabricius never moved to vacate the default judgment. Nor did it engage counsel to move to vacate the default judgment on PLF's behalf.

¶ 20          On January 8, 2014, Landreth moved for summary judgment as to Fabricius's liability to Landreth. Landreth's motion asserted that, because the trial court had entered a default judgment against PLF and had ruled that Fabricius was jointly and severally liable for PLF's debts, Landreth was entitled to summary judgment in his favor and against Fabricius as to liability. In response, Fabricius argued that it was not bound by the default judgment entered against PLF. After conducting a hearing, the trial court granted Landreth's motion for summary judgment and ruled that Fabricius was jointly and severally liable for the judgment against PLF. In so ruling, the trial court noted that Fabricius "certainly had the opportunity" to present personal defenses contesting that it was jointly and severally liable for PLF's debts.

¶ 21          More than one year later, Fabricius moved for summary judgment as to liability, arguing that Landreth's claims against Fabricius were untimely under section 214.3 of the Code (735 ILCS 5/13-214.3(c) (West 2012)) or under the judicially-created "reasonable time" exception to section 215 of the Code (735 ILCS 5/13-215 (West 2012)). Landreth moved to strike Fabricius's motion on the ground that Fabricius had waived such affirmative defenses or, in the alternative, that those defenses belonged to PLF, and PLF had waived them. The trial court granted Landreth's motion to strike Fabricius's motion, holding that Fabricius's motion was untimely and that the arguments asserted in the motion had been waived.

10

¶ 22     Landreth filed a motion for summary judgment as to damages, which the trial court granted in part. After the parties resolved their remaining disputes as to damages by agreement, the trial court entered a final judgment against Fabricius in the amount of $951,719.57.

¶ 23     This appeal followed.

¶ 24                              ANALYSIS

¶ 25     On appeal, Fabricius argues that the trial court erred by: (1) denying Fabricius's motion to dismiss Landreth's claims against Fabricius on statute of limitations grounds; (2) summarily determining that Fabricius is jointly and severally liable for the professional negligence and negligent misrepresentations of PLF; and (3) granting Landreth's motion for summary judgment against Fabricius as to liability.  Fabricius also argues that the trial court abused its discretion by striking Fabricius's motion for summary judgment.  We address these arguments in turn.

¶ 26                    1.  Fabricius's Motion to Dismiss

¶ 27     Fabricius argues that the trial court erred in denying its section 2-619 motion to dismiss Landreth's claims as untimely under the applicable statute of limitations.  A motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the plaintiff's complaint (as well as all well-pled facts and reasonable inferences that can be drawn from them), but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim.  *DeLuna v. Burciaga*, 223 Ill.2d 49, 59 (2006). The movant bears the burden of establishing the applicable limitations period and that the claims are untimely pursuant to that limitations period as a matter of law.  *Stanley v. Chastek*, 34 Ill. App. 2d 220, 230 (1962).  Factual disputes regarding when a claim is or should be discovered, and other factual disputes whose resolution will determine the applicable limitations period, cannot be resolved on a section 2-619 motion.  *Clark v. Galen*

11

*Hospital*, 322 Ill. App. 3d 64 (2001). We review a trial court's denial of a section 2-619 motion *de novo*. *DeLuna*, 223 Ill. 2d at 59.

¶ 28 Fabricius did not identify any specific statute of limitations in his motion to dismiss. On appeal, Fabricius argues that Landreth's claims were untimely under section 214.3, which prescribes a two-year limitations period for claims filed against an attorney "arising out of the attorney's actions or omissions in the provision of professional legal services" (735 ILCS 5/13-214.3(b)(i) (West 2012)) and a six year statute of repose for such claims (735 ILCS 5/13-214.3(c) (West 2012)). Fabricius argues that Landreth's claims against Fabricius are predicated on the alleged legal malpractice of PLF. Claims for attorney malpractice accrue (and the two-year limitations provision under section 214.3(b) begins to run) when the plaintiff knows or should know facts that would cause him to believe that his injury was wrongfully caused by the attorney's negligence. *Romano v. Morrisroe*, 326 Ill. App. 3d 26, 28 (2001). Fabricius maintains that Landreth should have known that he was injured by PLF's professional negligence no later than April 4, 2007, when the City moved to dismiss Landreth's breach of contract suit on the ground that the consulting agreement drafted by Leigh was void *ab initio* because it did not comply with certain provisions of the Illinois Municipal Code. Thus, Fabricius maintains, section 214.3(b) required Landreth to file his lawsuit against Fabricius no later than April 4, 2009. Because Landreth did not name Fabricius as a defendant until he filed his second amended complaint on November 10, 2011, Fabricius contends that Landreth's claims against him were untimely.

¶ 29 In the alternative, Fabricius argues that the six-year statute of repose prescribed by section 214.3(c) bars Landreth's claims. The statute of repose begins to run on the last date on which the defendant attorney performed the allegedly negligent representation, irrespective of

12

when the injury occurs or is discovered by the plaintiff. *Carlen v. First State Bank of Beecher City*, 367 Ill. App. 3d 1051, 1056 (2006); *Fricka v. Bauer*, 309 Ill. App. 3d 82, 86-87 (1999). In this case, PLF's allegedly negligent representation of Landreth ceased on August 5, 2003, the date Landreth and the City executed the consulting agreement. Thus, Fabricius maintains, Landreth had to file his claims against Fabricius no more than six years later, *i.e.*, by August 5, 2009. As noted above, Landreth did not file his claims against Fabricius until November 10, 2011, more than two years too late.

¶ 30    These arguments fail, for several reasons. As an initial matter, Fabricius forfeited any reliance on section 214.3(b)'s two-year limitations period by failing to raise that particular provision as an affirmative defense or in his motion to dismiss. *Fox v. Heimann*, 375 Ill. App. 3d 35, 45 (2007) (ruling that "the expiration of a statute of limitations is an affirmative defense which is forfeited if not timely raised in the trial court," and holding that defendants waived any argument based on a particular statute of limitations where defendants neither raised that statute's limitations period as a ground for dismissal in a motion to dismiss nor asserted it as an affirmative defense in their answer to the plaintiff's complaint); see also *Goldman v. Walco Tool & Engineering Co.*, 243 Ill. App. 3d 981, 989 (1993). Although Fabricius filed an affirmative defense that referenced 214.3 ten months after filing its Answer, that affirmative defense focused entirely on section 214.3's six-year statute of repose. Specifically, Fabricius's affirmative defense asserted that that some or all of Landreth's claims were barred by section 214.3 because the acts or omissions upon which those claims were premised "occurred in 2003." Although the affirmative defense mentioned section 214.3(b)'s two-year limitations period in passing, it did not plead facts suggesting when Landreth knew or should have known facts that would cause him to believe that his injury was wrongfully caused by his attorneys' negligence. Nor did it

13

plead facts suggesting that Landreth had such actual or constructive knowledge more than two years before he filed suit against Fabricius. Illinois is a fact pleading jurisdiction, and "[t]he facts constituting any affirmative defense ** * must be plainly set forth in the answer or reply." 735 ILCS 5/2-613(d) (West 2012). Accordingly, Fabricius has forfeited any such argument on appeal.

¶ 31     However, even assuming *arguendo* that all of Fabricius's arguments under section 214.3 were preserved for appeal, those arguments fail on the merits. Section 214.3 applies only to claims filed against an attorney "arising out of the attorney's actions or omissions in the provision of professional legal services." Landreth's claims against Fabricius do not arise out of Fabricius's provision of legal services to Landreth. Landreth's second amended complaint does not allege that Fabricius ever personally represented Landreth or performed any legal services for him. Rather, Landreth seeks to hold Fabricius liable only derivatively based upon Fabricius's status as a partner or member of PLF. Accordingly, section 214.3 does not apply to Landreth's claims against Fabricius.

¶ 32     In any event, even if section 214.3's statutes of limitation and repose applied to Landreth's derivative claims against Fabricius, those claims would still have been timely under the circumstances presented in this case. Section 215 of the Code tolls the running of statutes of limitation and repose, including the statute of repose under section 214.3(c), in cases involving fraudulent concealment. *DeLuna*, 223 Ill. 2d at 66-76; *Carlson v. Fish*, 2015 IL App (1st) 140526, ¶¶ 43-46. Specifically, section 215 provides that:

> "If a person liable to an action fraudulently conceals the cause of such action from
> the knowledge of the person entitled thereto, the action may be commenced at any
> time within 5 years after the person entitled to bring the same discovers that he or

14

she has such cause of action, and not afterwards." 735 ILCS 5/13-215 (West 2012).

In its motion for reconsideration of the trial court's initial order granting Fabricius's motion to dismiss, Landreth argued, *inter alia*, that section 215 of the Code rendered Landreth's claims against Fabricius timely because some of the attorney defendants had fraudulently concealed any cause of action against them. The trial court granted Landreth's motion and reversed its prior ruling that Landreth's claims were untimely. Fabricius does not argue on appeal that Landreth has failed to adequately allege fraudulent concealment by Fabricius or any other defendant. Accordingly, the trial court's ruling on that issue stands. Pursuant to section 215, Landreth would have had to file suit within five years after he discovered that he had a cause of action. 735 ILCS 5/13-215 (West 2012). Fabricius argued that Landreth discovered his cause of action against PLF and Fabricius no later than April 4, 2007, when the City moved to dismiss Landreth's breach of contract suit against it on the ground that its agreement with Landreth was void *ab initio* for failure to include a prior appropriation as required by the Municipal Code. Landreth contends that he did not know he had a cause of action against PLF or any attorney defendants until February 28, 2008, when the trial court dismissed Landreth's breach of contract action against the City on the ground that the agreement violated the Municipal Code. Assuming *arguendo* that Fabricius' is correct (*i.e.*, that Landreth discovered his cause of action on April 4, 2007), Landreth would have had to file his complaint within 5 years from that date (*i.e.*, by April 4, 2012). 735 ILCS 5/13-215 (West 2012). As noted above, Landreth filed his second amended complaint naming PLF and Fabricius as defendants on November 10, 2011. Accordingly, even if section 214.3 applied to Landreth's claims against Fabricius, those claims would have been timely filed.

15

¶ 33 Fabricius argues that section 215 does not render Landreth's claims timely in this case due to a judicially-constructed "reasonable time" rule. Citing *Mauer v. Rubin*, 401 Ill. App. 3d 630, 649 (2010), Fabricius asserts that courts have declined to apply fraudulent concealment to toll the statute of repose in cases where the claimant discovers the fraudulent concealment, or should have discovered it through ordinary diligence, while a reasonable time remains within the limitations period. Applying this reasoning, Fabricius argues that section 215 should not apply in this case because Landreth knew or should have known that he had a cause of action by April 4, 2007, which was more than two years prior to the expiration of section 214.3's six-year statute of repose.

¶ 34 However, Fabricius has forfeited any reliance on the so-called "reasonable time rule" by failing to raise it before the trial court, either as an affirmative defense or as argument in support of Fabricius's motion to dismiss (or in opposition to Landreth's motions for reconsideration). *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109, (2006) ("As a general rule, arguments for dismissal that are not raised at the trial court level are waived and cannot be raised for the first time on appeal."); *Fox*, 375 Ill. App. 3d at 45 ("the expiration of a statute of limitations is an affirmative defense which is forfeited if not timely raised in the trial court" either in an Answer or a motion to dismiss); *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 584 (2009) ("statutes of repose are affirmative defenses subject to forfeiture"). Although Fabricius attempted to raise the "reasonable time rule" in a motion for summary judgment, the trial court properly struck Fabricius's motion for summary judgment because it was filed after summary judgment had been granted against Fabricius and after Fabricius had forfeited the "reasonable time rule" argument by failing to raise it in its Answer, its motion to dismiss, or in

16

response to Fabricius's motions for reconsideration, summary determination, or summary judgment. (See section 4, *infra*.)[4]

¶ 35　　　Fabricius further argues that, even if the trial court correctly determined that the five-year limitations period prescribed by section 205 (735 ILCS 5/13-205 (West 2012)) applies to Landreth's claims against Fabricius, those claims were untimely. As an initial matter, Fabricius waived this argument by failing to plead it as an affirmative defense or otherwise raise it before the trial court.

¶ 36　　　In any event, the argument fails. Section 205's limitations period begins to run when the cause of action "accrues." *Id.* A cause of action "accrues" when facts exist that authorize the bringing of the cause of action. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52. However, our supreme court has adopted the "discovery rule" to "ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action." *Id.*; see also *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 20. The discovery rule postpones the start of the limitations period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused. *Henderson, LLC*, 2015 IL 118139, ¶ 52; *Khan*, 2012 IL 112219, ¶ 20. At the point when the party knows or reasonably should know that the injury was wrongfully caused, the party is under obligation to inquire further to determine whether an actionable wrong has been committed. *Henderson, LLC*, 2015 IL 118139, ¶ 52; *Khan*, 2012 IL 112219, ¶ 20. A party is aware that his injury might have been wrongfully caused when he is

---

[4] Landreth argues that the "reasonable time rule" announced in *Maurer* is inconsistent with our supreme court's holding in *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72 (1995) and violates the principle that courts may not read into a statute any limitations or conditions which are not expressed in the plain language of the statute (see, *e.g.*, *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 23). Because we hold that Fabricius has forfeited any argument under the "reasonable time rule," we decline to address these arguments.

"aware of some possible fault on the part of the defendant*." Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 24. The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them. *Henderson, LLC*, 2015 IL 118139, ¶ 52; *Khan*, 2012 IL 112219, ¶ 20; *Steinmetz v. Wolgamot,* 2013 IL App (1st) 121375, ¶ 39.

¶ 37        Fabricius argues that Landreth's claims against PLF and Fabricius accrued when the City failed to pay Landreth's February 2006 invoice.  However, contrary to Fabricius's argument, the City's failure to pay the invoice would not necessarily have put a reasonable plaintiff on notice that he was injured by his attorney's negligence, or that he may have an actionable claim against his attorney.  Landreth could have reasonably assumed at that point that the City was breaching a valid agreement, not that the agreement was void *ab initio* due to attorney malpractice.  The City had performed under the agreement for two years.  When the City suddenly stopped paying Landreth under the agreement in late 2005 and early 2006, there was no indication that it did so because the agreement was void.  At that time, Landreth could have reasonably surmised that he was being injured by the City, but not by his attorneys. Arguably, Landreth could have reasonably known that he had a potential claim of legal malpractice against his attorneys no later than February 28, 2008, when a court declared the consulting agreement void *ab initio*. See, *e.g.*, *York Woods Community Ass'n v. O'Brien*, 353 Ill. App. 3d 293, 297-99 (2004) (claims against attorney for defective incorporation did not accrue until reviewing court held incorporation invalid); *Hermitage Corp.*, 166 Ill. 2d 72, at 84-87 (holding that claims against negligent preparer of mechanic's lien did not accrue until lien was substantially reduced by court).  If that is so, Landreth's claims were timely under section 205 because he filed them within five years of that date. Even assuming *arguendo* that Landreth should have reasonably suspected that he was

18

wrongfully injured by his attorneys on April 4, 2007, the date when the City filed its motion to dismiss Landreth's breach of contract claim, Landreth's claims would still be timely under section 205 because they were filed within five years of that date.

¶ 38    In any event, the date when Landreth knew or reasonably should have known of his injury and its wrongful cause cannot be determined as a matter of law in this case. Accordingly, the trial court did not err in denying Fabricius's motion to dismiss or in finding Landreth's claims timely under section 205.

¶ 39    Landreth argues in the alternative that his claims for derivative liability against Fabricius did not accrue until judgment was entered against PLF in December 2013. See, *e.g.*, *American Star Energy Minerals Corp. v. Stowers*, 457 S.W.3d 427 (Tex. 2015) (under the Texas Partnership Act, claims against partner for debts and liabilities incurred by a partnership do not accrue until after a liability judgment is entered against the partnership); see generally *Anixter Brothers, Inc. Central Steel & Wire Co.*, 123 Ill. App. 3d 947, 953 (1984) (claim for implied contractual indemnity does not accrue before primary liability is determined, although third-party claim for indemnity may be filed by indemnitee in initial action before accrual of indemnity claim to facilitate settlement). Because we find that the trial court correctly denied Fabricius's motion to dismiss for the reasons set forth above, we decline to address Landreth's alternative argument.

¶ 40    2. Fabricius's Joint and Several Liability for the Judgment Against PLF

¶ 41    Fabricius argues that the trial court erred in granting Landreth's motion for summary determination that Fabricius is jointly and severally liable for the default judgment entered against PLF. Section 2–1005(d) of the Code allows a party to seek a summary determination of "one or more, but less than all, of the major issues in the case, [if] the court finds that there is no

19

genuine issue of material fact as to that issue or those issues." *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 21 (quoting 735 ILCS 5/2–1005(d) (West 2016)). We review a summary determination *de novo*. *Id.*; *People ex rel. Ryan v. Environmental Waste Resources, Inc.*, 335 Ill. App. 3d 751, 756 (2002).

¶ 42　　　　The trial court ruled that Fabricius was jointly and severally liable for the professional negligence and negligent misrepresentations of PLF referenced in counts VI and VIII of Landreth's third amended complaint for two independent reasons. First, the trial court held that there was no genuine dispute of material fact that PLF was a voluntary unincorporated association organized for pecuniary profit or that Fabricius was a member of that association. Second, the trial court held that there was no genuine dispute of material fact that Fabricius was a partner of a "partnership by estoppel" (*i.e.*, PLF) pursuant to 805 ILCS 206/308(a) (West 2012). We affirm on the second ground.

¶ 43　　　　"One who permits the holding out of another as his partner is estoped to deny the partnership relationship as against third persons who rely on the existence of the apparent partnership." *Bergman and Lefkow Insurance Agency v. Flash Cab Co.*, 100 Ill. App. 2d 415 (1969). Common law partnership by estoppel principles have been codified at 805 ILCS 206/308(a) (West 2012). All partners of a partnership by estoppel "are liable jointly and severally for all obligations of the partnership." *Id.* To establish a claim for partnership by estoppel under the statute, a plaintiff must prove that: (1) the defendant either directly represented that it was a partner in a partnership or consented to another's representation to that effect; (2) the plaintiff was a recipient of the representation; and (3) in reliance on the representation, the plaintiff entered into a transaction with the actual or purported partnership. 805 ILCS 206/308(a) (West 2012). Where the representation is made in a public manner, the

20

defendant need not have been aware that the representation of partnership was made to the plaintiff. *Id.*

¶ 44    All three elements were met in this case. Landreth presented unrebutted evidence in the form of court filings and other public documents which showed that, from June 1998 through February 2006, Fabricius had repeatedly and publicly represented that PLF was a law firm and that Fabricius was an attorney practicing with the PLF law firm.[5] It was also undisputed that PLF used stationary bearing the legend "Law Offices, POOL, LEIGH & FABRICIUS," and used letterhead listing those attorney names and stating that PLF was "An Association Including Professional Corporations." In addition, Landreth signed an agreement that identified PLF as counsel for Landreth and the City. (The agreement was filed for public inspection before being executed by the City.) Moreover, Landreth's testified that he reasonably believed that he was represented by PLF in the drafting of the agreement, that an attorney with the last name of Fabricius was a partner in the [PLF] law firm at the time PLF drafted the agreement, and that Landreth reasonably relied to his detriment on the representation that PLF was a law firm jointly representing him and the City in connection with the preparation of the consulting agreement.

¶ 45    This evidence was sufficient to establish that PLF was a partnership by estoppel and that Fabricius was a partner in that partnership. See, *e.g.*, *In the Matter of the Estate of Pinckard*, 94 Ill. App. 3d 34, 42-43 (1980) (noting that individuals who hold themselves out to the public as a law firm partnership may be held liable on a partnership by estoppel theory); *J. Huizinga*

---

[5] Specifically, Fabricius presented: (1) reported decisions of the Illinois Appellate Court (Third District) identifying Fabricius as an attorney with the law firm of PLF; (2) written appearances and other documents filed with state and federal courts identifying Fabricius as an attorney and/or partner with the law firm of PLF; (3) draft easements and draft property agreements provided to Landreth in connection with his work for the City identifying PLF as the preparer of the easements and the law firm to which notices of the property agreements should be sent; (4) admissions by Fabricius that he shared office space, a copy machine, a fax machine, a telephone system and utilities, and other unspecified expenses with P & L from July 1995 until February 2006.

*Cartage Co. v. Bedrock Enterprises*, 177 Ill. App. 3d 346, 348-49 (1988) (ruling that partnership by estoppel could be found where defendants co-signed land trust document, indicated that bills should be sent to one of the co-defendants at the purported partnership, and co-signed stock certificates given to plaintiff); see generally *Dow v. Jones*, 311 F. Supp. 2d 461, 470-71 (D. Md. 2004) (partnership by estoppel could be found under District of Columbia's Uniform Partnership Act provisions where, *inter alia*, defendant's name was included in law firm name and plaintiff was never advised by anyone that the defendant was not a partner or that the law firm was not a partnership).

¶ 46 Fabricius argues that there was no evidence that Landreth ever met with Fabricius "regarding any of the dealings he had which are the subject of the lawsuit, nor that he discussed it with him." However, because the unrebutted evidence established that Fabricius publicly held itself out as a partner or member of the PLF law firm, a partnership by estoppel may be found even if Fabricius never met with Landreth and never knew that the representation of a partnership was made to Landreth. 805 ILCS 206/308(a) (West 2012). Fabricius also challenges Landreth's claim that Landreth relied upon the representation of partnership. However, Landreth's unrebutted, sworn statement that he believed that he was being represented by PLF in connection with the agreement and that he believed that an attorney with the last name of Fabricius was a member of that law firm is enough to satisfy the reliance element. Fabricius cites no   authority to the contrary.

¶ 47 Fabricius did not rebut the evidence of a partnership by estoppel presented by Landreth. Nor did Fabricius suggest that it ever disclaimed such a partnership during the relevant time period. Thus, we hold that the trial court did not err in finding Fabricius liable for PLF's professional negligence and negligent misrepresentations under a partnership by estoppel theory.

¶ 48              3. Landreth's Motion for Summary Judgment as to Fabricius's Liability

¶ 49       After the trial court granted Landreth's motion for summary determination, Landreth moved for summary judgment as to Fabricius's liability. In its motion, Landreth asserted that, because the trial court had entered a default judgment against PLF and had ruled that Fabricius was jointly and severally liable for PLF's professional negligence, Landreth was entitled to summary judgment against Fabricius as to liability. After conducting a hearing, the trial court granted Landreth's motion and ruled that Fabricius was jointly and severally liable for the judgment against PLF. In so ruling, the trial court noted that Fabricius "certainly had the opportunity" to present personal defenses contesting that it was jointly and severally liable for PLF's debts.

¶ 50       As it did before the trial court, Fabricius argues on appeal that it is not bound by the default judgment entered against PLF and not liable for PLF's acts of professional negligence or negligent misrepresentations. In support of this argument, Fabricius cites *Chamblin v. Chamblin*, 362 Ill. 588, 593 (1936), and *Glos v. Swanson*, 227 Ill. 179, 182 (1907) for the proposition that the default of one defendant is not an admission by other defendants and does not relieve the plaintiff of the burden of establishing his case against other defendants who appear and plead. However, neither of the cases cited by Fabricius involves a default judgment entered against a partnership or association. A judgment against a partnership binds the individual members or partners of the partnership regardless of whether they participate as parties to the litigation. See, *e.g.*, 805 ILCS 206/308 (2012) ("all partners are liable jointly and severally for all obligations of the partnership"). A default judgment has the same effect and status as any other judgment under Illinois law. *Housing Authority for LaSalle County v. YMCA of Ottawa*, 101 Ill. 2d 246, 254

23

(1984); see also *Monreal v. Sciortino*, 238 Ill. App.3d 475, 479 (1992) ("Judgments by default have the same validity and force as those rendered upon a trial of the issues.").

¶ 51        Moreover, Fabricius participated in the litigation, asserted personal defenses to Landreth's motion for summary determination, and lost. The trial court repeatedly invited Fabricius to oppose the entry of a default judgment against PLF. Nevertheless, despite the evident effect that such a judgment would have against Fabricius, Fabricius did not assume PLF's defense, engage counsel for PLF, or oppose the entry of default judgment against PLF. Nor did Fabricius move to vacate the default judgment subsequently entered against PLF. Under these circumstances, Fabricius forfeited any defense to liability that PLF may have interposed, and Fabricius cannot reasonably contend that it is not bound by the default judgment entered against PLF.

¶ 52                    4. The Striking of Fabricius's Motion for Summary Judgment

¶ 53        Fabricius further argues that the trial court abused its discretion by striking its motion for summary judgment. Fabricius's motion argued that Landreth's claims were time-barred under section 214.3 and that the "reasonable time rule" precluded tolling of section 214.3(c)'s statute of repose due to fraudulent concealment. The trial court granted Landreth's motion to strike Fabricius's motion, reasoning, *inter alia*, that the court had already determined that Fabricius had waived any arguments under section 214.3.

¶ 54        A trial court has the inherent authority to control its docket, which includes the discretion to strike tardy pleadings. See, *e.g.*, *Bank of America, N.A. v, Land*, 2013 IL App (5th) 120283, ¶¶ 4, 19-24 (holding that the trial court did not abuse its discretion by striking defendant's response to plaintiff's motion for summary judgment and defendant's motion for leave to amend its answer by asserting new affirmative defenses and counterclaims where defendant's motions

24

were filed on the day the plaintiff's motion for summary judgment was scheduled for hearing). Although Fabricius's motion for summary judgment was filed within the trial court's initial deadline for dispositive motions, it was filed after a default judgment had been entered against PLF and after summary judgment had been granted against Fabricius as to liability. At that time, the only issues that remained to be litigated concerned damages.

¶ 55        Moreover, at the time Fabricius filed its motion for summary judgment, it had already forfeited the arguments it sought to raise in that motion by failing to raise those arguments in its Answer[6] or motion to dismiss, or in opposition to Landreth's motions for reconsideration, summary determination, or summary judgment. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109, (2006) ("arguments for dismissal that are not raised at the trial court level are waived and cannot be raised for the first time on appeal"); *Fox*, 375 Ill. App. 3d at 45 ("the expiration of a statute of limitations is an affirmative defense which is forfeited if not timely raised in the trial court" either in an Answer or a motion to dismiss); *Grainger v. Harrah's Casino*, 2014 IL App (3d) 130029, ¶ 32 (plaintiff forfeited argument not raised in response to defendant's motion for summary judgment); *Myoda Computer Center, Inc. v. American Family Insurance Co.*, 389 Ill. App. 3d 419, 423 (2009) (failure to oppose a summary judgment motion by filing counter-affidavits is fatal). Further, as noted above, by failing to oppose the default judgment entered against PLF, Fabricius forfeited the right to assert any defenses belonging to PLF as a defense to Fabricius's liability.

¶ 56        Accordingly, under the circumstances presented here, the trial court did not abuse its discretion in granting Landreth's motion to strike Fabricius's motion for summary judgment.

---

[6] Although the trial court allowed Fabricius to assert section 214.3 as an affirmative defense 10 months after Fabricius had filed its Answer, the trial court noted that it did so only to preserve the issue for appeal and that it had already ruled on the applicable statute of limitations.

¶ 57                                    CONCLUSION

¶ 58         For the reasons set forth above, the judgment of the circuit court of LaSalle County is affirmed.

¶ 59         Affirmed.